UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOMAS REY, *et al.*                                           CIVIL ACTION

VERSUS                                                        NO. 21-1188

LCMC HEALTHCARE PARTNERS,                                     SECTION M (1)
LLC, *et al.*

## ORDER & REASONS

Before the Court is a motion by plaintiffs Tomas Rey, Melisa Ray, Robert Denny, Victoria Emmerling, Nicole Williamson, and Isabel Reynolds (collectively, "Plaintiffs") to remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana.[1] Defendants LCMC Healthcare Partners, LLC, Louisiana Children's Medical Center, Children's Hospital, and LCMC Health Holdings, Inc. (collectively, "Hospital Defendants")[2] respond in opposition.[3] Plaintiffs reply in further support of their motion,[4] and the Hospital Defendants filed a surreply in further opposition.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying Plaintiffs' motion because this Court has diversity subject-matter jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

I.  **BACKGROUND**

This matter concerns complaints of noise caused by the operation of a patient-transport helicopter to and from a helistop at Children's Hospital. Plaintiffs in this action are residents,

---

[1] R. Doc. 11. Named Plaintiffs are all Louisiana citizens. R. Doc. 1-1 at 1.
[2] The Hospital Defendants are all Louisiana citizens. *Id.* at 2.
[3] R. Doc. 17.
[4] R. Doc. 26.
[5] R. Doc. 29.

domiciliaries, and tenants who live in an area of uptown New Orleans bounded by the Mississippi River to the south, both sides of Camp Street to the north, Valmont Street to the east, and Exposition Boulevard to the west (the "area of concern").[6] Children's Hospital, a non-profit pediatric medical center that offers a complete range of medical services for children from birth until age 21, is situated in this neighborhood.[7] In 2019, Children's Hospital cared for children from all 64 parishes, 43 states, and 9 countries.[8] The hospital maintains a helicopter that transports patients from across the state and region to the facility to receive critical care services.[9] Before January 1, 2020, Children's Hospital's helicopter operated from a heliport on land adjacent to the New Orleans Public Belt Railroad tracks and the extension of Leake Avenue.[10] On May 18, 2020, the helicopter's operations were moved to a heliport atop a four-story central tower expansion of the hospital.[11]

Plaintiffs filed this action in state court alleging that the helicopter's new flight path affects the area of concern with unacceptable levels of noise and vibration.[12] Specifically, they allege that the helicopter's flights directly over their homes and its takeoffs and landings from the heliport at all hours of the day and night emit deafening noise and vibrations that cause physical and mental discomfort, property damage, and annoyance, and thereby constitute a nuisance.[13] Plaintiffs propose to represent a class consisting of:

> All persons who are residents, domiciliaries, tenants, and/or are located in Orleans Parish, who have suffered and continue to suffer damages including property damage and depreciation of their homes as well as personal injury as a result of the relocation of the LCMC Heath heliport and who reside in an area bounded by the

---

[6] R. Doc. 1-1 at 2.
[7] *Id.*; R. Doc. 17 at 2.
[8] R. Doc. 17 at 2.
[9] *Id.*
[10] R. Doc. 1-1 at 3.
[11] *Id.* at 5.
[12] *Id.*
[13] *Id.*

> Mississippi River to the South, both sides of Camp Street to the North; Valmont Street to the East; and Exposition Boulevard to the West.[14]

Plaintiffs seek an injunction requiring the Hospital Defendants to relocate the heliport to an area that will not continue to damage and interfere with the enjoyment of their property.[15] Alternatively, they seek an injunction requiring the Hospital Defendants to abate the helicopter noise.[16] Plaintiffs also seek damages for personal injury and property damage under theories of strict liability, La. Civ. Code arts. 667 to 669, and negligence, La. Civ. Code arts. 2315 and 2317.[17] The Hospital Defendants removed the action to this Court asserting federal question subject-matter jurisdiction on the premise that Plaintiffs' claim for injunctive relief, which seeks to compel the relocation of the heliport, is preempted by federal law, specifically, the Federal Aviation Act ("FAA"), 49 U.S.C. §§ 40101, *et seq.* The Hospital Defendants also invoke diversity subject-matter jurisdiction under CAFA.[18]

## II. PENDING MOTION

Plaintiffs move to remand this matter to state court arguing that it is a local controversy involving local parties that will be decided under Louisiana law.[19] Plaintiffs argue that the FAA does not preempt their Louisiana state-law noise and nuisance claims because the complaint does not raise any claim under any federal law and the FAA does not provide a private right of action or include an express preemption provision.[20] Plaintiffs argue that their intention to prove their state-law nuisance claims with evidence that the Hospital Defendants failed to comply with FAA requirements and related regulations does not parlay the action into one arising under federal law.[21]

---

[14] *Id.* at 8.
[15] *Id.* at 9.
[16] *Id.*
[17] *Id.* at 10-11.
[18] R. Doc. 1.
[19] R. Doc. 11-1.
[20] *Id.* at 6-14.
[21] *Id.*

Plaintiffs also argue that this case has nothing to do with the use or regulation of airspace, but rather the location of a heliport, over which the city and state have authority.[22] Further, Plaintiffs argue that the Hospital Defendants have not carried their burden of demonstrating that this Court has diversity-subject matter jurisdiction under CAFA because they have not shown that there is at least one diverse putative plaintiff, and CAFA's "home state" and "local controversy" exceptions both apply.[23]

In opposition, the Hospital Defendants argue that the FAA preempts Plaintiffs' state-law claims because Plaintiffs' claim for injunctive relief calls for a relocation of the heliport, directly affecting airspace usage, and consequently "arises under" federal law, namely, the FAA.[24] The Hospital Defendants further argue that this Court has diversity subject-matter jurisdiction under CAFA because they have shown that at least one putative plaintiff is not a Louisiana domiciliary, and Plaintiffs did not carry their burden of demonstrating that the home-state and local-controversy exceptions apply.[25]

### III.   LAW & ANALYSIS[26]

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  CAFA provides that federal district courts have original jurisdiction over class actions[27] where "the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"

---

[22] *Id.* at 13.
[23] *Id.* at 14-24.
[24] R. Doc. 17 at 5-12.
[25] *Id.* at 12-25.
[26] Because the Court finds that it has diversity subject-matter jurisdiction under CAFA, it need not analyze whether it also has federal question subject-matter jurisdiction.
[27] A "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  *Id.* § 1332(d)(1)(B).

4

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). The minimal diversity requirement is met when any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). When challenged by a motion to remand, the removing defendant has the burden of proving that the court has diversity subject-matter jurisdiction under CAFA. *Phillips v. Severn Trent Env't Servs., Inc.*, 2007 WL 2757131, at *2 (E.D. La. Sept. 19, 2007).

Plaintiffs argue that the Hospital Defendants have not met their burden of proving that there is at least one putative plaintiff who is not a Louisiana citizen.[28] First, Plaintiffs take issue with the allegations in the notice of removal that "there is at least one individual who resides in the 'Areas of Concern' and who was more likely than not a domiciliary of a foreign state and/or of a state other than Louisiana at the time the Action was filed."[29] Plaintiffs argue that, absent evidence submitted with the notice of removal, this allegation is speculative and insufficient to carry the Hospital Defendants' burden of proving minimal diversity.[30] Plaintiffs' argument misses the mark. "Diversity jurisdiction rests on the facts that exist at the time of removal, not on the sufficiency of the jurisdictional allegations contained in the notice of removal." *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 570 (E.D. La. 2019) (footnote omitted). Thus, when removal is challenged on a motion to remand, the removing defendant must then prove by a preponderance of the evidence that jurisdiction existed at the time of removal. *Stockton v. Allstate Fire & Cas. Ins. Co.*, 2020 WL 7264810, at *3 (W.D. Tex. Dec. 10, 2020); *Nichols v. Chesapeake Operating, LLC*, 2017 WL 713906, at *1 n.2 (W.D. Okla. Feb. 23, 2017) ("A party must support their jurisdictional allegations by competent proof only when those allegations have been challenged.") (citing *Hertz Corp. v.*

---

[28] It is undisputed that the proposed class has more than 100 members and that there is more than $5,000,000 in controversy. *See* R. Docs. 1 & 11.
[29] R. Doc. 11-1 at 15-17 (quoting R. Doc. 1 at 9).
[30] *Id.*

5

*Friend*, 559 U.S. 77, 96-97 (2010)). To satisfy this burden, the Hospital Defendants provide the declaration of Michael Dodson, one of their attorneys, attesting to the results of public records research he conducted on the legal research website Westlaw[31] and supplemented with research on other websites.[32] This research shows that there is at least one putative class member who was not a Louisiana citizen at the time of removal.[33] For example, Christine Capetola lived within the area of concern from around January 2018 to June 2021.[34] During that time, she was a visiting professor at Tulane University and maintained a Texas driver's license.[35] Capetola now lives in California.[36] Her history as a temporary resident, her status as a visiting professor, and her failure to obtain a Louisiana driver's license indicate, more likely than not, that she lacked an intention to remain in Louisiana and thus was not a domiciliary or citizen of the state *See Evans v. Enter. Prods. Partners, LP*, 426 F. Supp. 3d 397, 405 (S.D. Tex. 2019) (acknowledging that a driver's license is probative of an intent to remain in a state because a person is unlikely to obtain a driver's license in a state she does not intend to remain in for some time). Moreover, Plaintiffs ignore an additional declaration submitted by the Hospital Defendants in support of CAFA jurisdiction, this one by Jonathan Brouk, the hospital's senior vice president and chief operating officer/chief strategy officer, in which he attests that his search of the hospital's records revealed that at least one person residing in its on-campus housing was domiciled in Mississippi.[37] Accordingly, the

---

[31] Westlaw is a reputable legal research provider recognized and relied upon by attorneys, as well as this Court and other courts. *Cf. Dalby v. Diaz*, 2020 WL 6219329, at *2 (E.D. Cal. Sept. 10, 2020) (public records available on Westlaw are subject to judicial notice). As such, Dodson did not conduct random, unreliable internet searches as suggested by Plaintiffs. *See* R. Doc. 26 at 8-9.

[32] R. Doc. 17-3.

[33] Plaintiffs argue that the Court cannot consider Dodson's declaration and the information attached to it because the evidence was gathered, and the declaration dated, 47 days post-removal, not at the time of removal. R. Doc. 26 at 6-7. Again, Plaintiffs' argument misses the mark. Although the evidence attached to the declaration was gathered post-removal, the information shows jurisdictional facts as they existed at the time of removal. *See* R. Doc. 17-3.

[34] *Id.* at 6.
[35] *Id.* at 6-44.
[36] *Id.* at 6.
[37] R. Doc. 17-5 at 2.

Hospital Defendants have met their burden of establishing minimal diversity by a preponderance of the evidence.

However, the CAFA inquiry does not end with the basic jurisdictional test for removal because the district court can decline jurisdiction under three provisions: (1) the local-controversy exception, 28 U.S.C. § 1332(d)(4)(A); the home-state exception, *id.* § 1332(d)(4)(B); and discretionary jurisdiction, *id.* § 1332(d)(3).[38]  *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 810-11 (5th Cir. 2007).  The party seeking remand bears the burden of proving that the district court is divested of subject-matter jurisdiction under an exception to CAFA removal. *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 338 & 342 (5th Cir. 2016).  "The language, structure, and history of CAFA all demonstrate that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Id*. at 337 (quotation and alteration omitted).  Thus, "all doubts [are] resolved in favor of exercising jurisdiction over the case." *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011) (quotation omitted).

Plaintiffs argue that CAFA's local-controversy and home-state exceptions preclude this Court from exercising jurisdiction over this case.[39]  CAFA's local-controversy exception provides that a district court "shall decline to exercise jurisdiction" –

   (i) over a class action in which –

      (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

      (II) at least 1 defendant is a defendant –

         (aa) from whom significant relief is sought by members of the plaintiff class;

---

[38] Plaintiffs present no arguments regarding the applicability of CAFA's discretionary-jurisdiction exception so have not even begun to bear their burden on this score.  *See* R. Doc. 11-1.
[39] *Id.* at 14-24.

> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A). Similarly, the home-state exception provides that the district court "shall decline to exercise jurisdiction" over the class action if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was original filed." *Id.* at § 1332(d)(4)(B).

Because the Hospital Defendants do not contest the presence of the additional elements required for the local-controversy exception, the question here is whether Plaintiffs have demonstrated that at least two-thirds of the putative class members are Louisiana citizens – the requirement common to both the local controversy and home state exceptions. Plaintiffs argue that the Court should apply a "common sense presumption" that most of the people who live in the area of concern are Louisiana citizens.[40] Plaintiffs further argue that this presumption is bolstered by property tax records indicating that there are 1,489 properties in the area of concern, 1,227 of which list a Louisiana address in the owner information, and 805 of which have homestead exemptions on file, meaning that the homeowner has sworn he or she lives at the property.[41] This evidence is insufficient to satisfy Plaintiffs' burden of proving the applicability of the exceptions.

---

[40] R. Doc. 11-1 at 20-24.
[41] *Id.* at 22-24 (citing R. Doc. 11-4).

Although it would ordinarily seem logical – and thus supportive of Plaintiffs' suggested presumption – that persons living in a certain area would be domiciled within that state, the area of concern is near two major universities and constitutes a popular tourist destination. These factors conspire to make the population in the area of concern more transient than it would be in a different area not so characterized and thus render the proposed presumption inappropriate. To be sure, Plaintiffs appear to acknowledge as much, having defined the putative class to include not only domiciliaries, but also other (presumably, nondomiciliary) residents and tenants who live in the area of concern. As shown by the declaration of Robert Edgecombe, III, a real estate and environmental economics consultant,[42] the property tax roll data upon which Plaintiffs rely does not prove that at least two-thirds of the population of the area of concern consists of Louisiana citizens.[43] The area of concern has dozens of multi-family housing units (or so-called "shotgun doubles"), which means that even if the owner lives on site, non-Louisiana citizens (*e.g.*, university students, tourists, or other transients) could live in the other units and they are not accounted for in the property tax rolls, skewing the comprehensiveness and accuracy of the tax rolls' population data for these purposes. Further, the fact that persons have an address in Louisiana is not determinative of the question of domicile – which requires a showing of residence with an intent to remain – and thus not sufficient to establish citizenship. *See Preston*, 485 F.3d at 798-801. Neither the "common sense presumption" nor the list of addresses from the tax rolls is sufficient to carry Plaintiffs' burden. *See McMorris v. TJX Cos.*, 493 F. Supp. 2d 158, 165-66 (D. Mass. 2007) (holding that neither bare assertions of class members' citizenship or a list of home addresses

---

[42] R. Doc. 17-4.
[43] The Hospital Defendants rely on Edgecombe's data to show that the number of homestead exemptions in the area of concern can support a conclusion that no more than 54.4% of the putative class members and as little as 19.6% could be considered Louisiana domiciliaries. R. Doc. 17 at 20-21. The Court need not fix the number within this range in order to conclude that Plaintiffs have not demonstrated that the two-thirds threshold is exceeded.

9


of putative class members can sustain plaintiffs' burden of proof to establish citizenship for the purposes of the CAFA exceptions) (collecting cases). Thus, the Court finds that Plaintiffs have not met their burden of establishing that the local-controversy or home-state exception applies, and because all doubts in this regard are resolved in favor jurisdiction, the motion to remand must be denied.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion to remand (R. Doc. 11) is DENIED.

New Orleans, Louisiana, this 19th day of August, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE