## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TOMAS REY, ET AL.**

                **Plaintiffs,**

   **VERSUS**

**LCMC HEALTH CARE PARTNERS, LLC, ET AL.**

                **Defendants.**

**CIVIL ACTION NO. 2:21-cv-1188**

**SECTION:  M**
**JUDGE BARRY W. ASHE**

**DIVISION: 1**
**MAG. JANIS VAN MEERVELD**

---

<u>**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS**</u>

      Defendants LCMC Healthcare Partners, LLC, Louisiana Children's Medical Center, Children's Hospital, and LCMC Health Holdings, Inc. (collectively, "Children's Hospital") submit this memorandum in support of their motion to strike Plaintiffs' class allegations.

### I.       INTRODUCTION

      The subject of this lawsuit is Children's Hospital's medical emergency helicopter, "Abby." Six plaintiffs[1] are suing the hospital under Louisiana's nuisance and negligence laws, claiming Abby's noise and vibrations have, and continue to, disturb them, cause them emotional distress, cause them personal injury and property damage, and diminish their property values. These six, who all live within a block and a half of the hospital, seek to represent a class covering 76 blocks – from Audubon Park to Valmont Street; from the Mississippi River to Camp Street. In a recent filing, Plaintiffs explained, in order to be a class member, a resident of this 76-block swath of Uptown New Orleans must have suffered <u>all</u> of the following as a result of Abby's flights, takeoffs,

---

[1] Two sets of Plaintiffs reside together, so there are four households suing Children's Hospital.

and landings: property damage, personal injury damage, **and** depreciation of their property value.[2] According to their Petition, Plaintiffs intend to seek class certification under all three subparts of Fed. R. Civ. P. 23(b).[3] However, it is apparent from the nature of Plaintiffs' nuisance and negligence claims and spectrum of damages they seek that Plaintiffs cannot possibly obtain class certification under **any** of the subparts of Rule 23(b).

Certification under Rule 23(b)(3) requires, *inter alia*, that common questions of law or fact "predominate" and the class mechanism is "superior" to other available methods for fairly adjudicating the controversy.  Plaintiffs' alleged damages, including for emotional and personal injuries (*e.g.*, hearing loss, sleep disturbance, and mental health issues), damages to property, and diminution of property value, are <u>by their very nature</u> the types of individualized damages insusceptible to class-wide determination. Even assuming one resident within the 76-block class area could establish with competent evidence that he or she has sustained personal injuries and property damage and diminution in value of his or her home, such evidence would not obviate the need for every other class member to make his or her own showing in order to recover. On this point, the Fifth Circuit has long-expressed reluctance to certifying a class "where individual damages cannot be determined by reference to a mathematical or formulaic calculation." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006). Courts have stricken class allegations <u>pre-discovery</u> due to these individualized damages issues. *See, e.g., Bevrotte v. Caesars Entertainment Corp.*, 2011 WL 4634174, at *2 (E.D. La. Oct. 4, 2011) (Vance, J.); *Kemp v. Metabolife Intern., Inc.*, No. 00-cv-3513, 2002 WL 113894, at *3 (E.D. La. Jan. 25, 2002)

---

[2] Plaintiffs' Petition for Permission to Appeal filed with the Fifth Circuit, attached as Exhibit "A," affirmatively asserts that the class is now limited to owners of property "who ha[ve] sustained and continue[] to sustain all of the following: property damage, depreciation of their home and personal injury." Exhibit "A," p. 9.

[3] Plaintiffs' Petition recites the requirements of Louisiana's class action provision, La. C.C.P. art. 591 (because Plaintiffs' Petition was originally filed in state court), but the language of Art. 591 and Rule 23 is essentially the same.

(Berrigan, J.); *Coleman v. Sears Home Improvement Prods., Inc*., No. 16-cv-2537, 2017 WL 1064965, at *6-7 (E.D. La. Mar. 20, 2017) (Brown, J.); *Bauer v. Dean Morris, L.L.P.*, Nos. 08–5013, 08–5014, 2011 WL 3924963, at *7 (E.D. La. Sept. 7, 2011) (Duval, J.).

Even <u>liability</u> cannot be established on a class-wide basis. The nuisance and negligence claims Plaintiffs assert, by their own codal and jurisprudential definitions, <u>require</u> individualized determinations as to the "reasonableness" of the hospital's conduct as a property owner vis-à-vis the anticipated impact of Abby's noise on each putative class member and whether the noise allegedly generated by Abby caused mere "inconvenience" or instead caused "real damage." Even if the noise produced by Abby is found to rise to the level of causing "real damage" to a person living in close proximity to the helistop, that does not mean the same is true for someone living much farther away or for whom circumstances are otherwise very different. That is to say, individualized questions must be answered to determine if each putative class member <u>even has an actionable nuisance or negligence claim</u>. That is precisely why the Louisiana Supreme Court has held Louisiana's nuisance laws "do not lend themselves to resolution on a common, class-wide basis." *Price v. Martin*, 2011–0853, p. 6 (La. 12/6/11), 79 So.3d 960, 974. And it is precisely why the court struck the plaintiffs' class allegations in *Lauteman v. Bird Rides, Inc*., No. 18-cv-10049, 2019 WL 3037934, at *1 (C.D. Cal. May 31, 2019), also a putative nuisance class action.

No amount of discovery can eliminate these inherently individualized questions. In particular, no expert could possibly provide a reasonable basis for applying a uniform formula to all types of damages and claims. For example, no uniform formula could be used to determine whether a putative class member suffered "hearing loss," whether that hearing loss was caused by Abby, whether there were contributing factors, the extent of the hearing loss, and how the hearing loss impacted the person's life. Nor could an expert provide a formula to determine whether a

3

particular putative class member suffered emotional or property damages, the extent of those damages, and whether those damages were caused by Abby or by contributing factors.

Plaintiffs fare no better under Rules 23(b)(2) and (b)(1). Plaintiffs cannot satisfy the requirements of Rule 23(b)(1), the option for classes seeking injunctive relief, because they cannot even begin to show: (a) the request for injunctive relief predominates over Plaintiffs' request for money damages, (b) the conduct can be declared unlawful class-wide, and (c) class members were harmed in essentially the same way. This is especially apparent given Plaintiffs' recent mandate that putative class members must have suffered property damage, personal injury, and diminution in property value to even be included in the proposed class. It is impossible to fathom a class having suffered all of these types of damages together in essentially the same way. A Rule 23(b)(1)(a) mandatory class is likewise not available because: (1) the request for monetary relief clearly predominates and (2) there is no risk the defendants would be faced with judgments by courts that impose inconsistent affirmative obligations. Even if one court ordered Children's Hospital to move its helistop and another court did not order Children's Hospital do so, those judgments would not impose conflicting affirmative obligations on Children's Hospital within the meaning of Rule 23(b)(1)(A). Plaintiffs' inability to obtain certification under Rule 23(b)(2) and (b)(1) is compounded by the fact that those are "mandatory  **non-opt-out** classes," *Johnson v. Kansas City S. Ry. Co*., 208 F. App'x 292, 296 (5th Cir. 2006) (emphasis added), meaning every homeowner within the defined class would be forced into this lawsuit irrespective of whether he or she has any interest in opposing Children's Hospital's medical emergency helicopter.

## II.    LAW AND ARGUMENT

### a.  Motions to Strike Class Allegations

A court can strike class allegations, pre-discovery, pursuant to Fed. R. Civ. P. 23(d)(1)(D). *See, e.g., Bevrotte* , 2011 WL 4634174, at *2 (striking class allegations on the pleadings pursuant to Fed. R. Civ. P. 23(d)(1)(D) because individualized questions of causation and damages would inevitably predominate). A court may also strike class allegations pursuant to Fed. R. Civ. P. 12(f) or 12(b)(6) where individualized damages and liability inquiries inevitably predominate. *See, e.g., Coleman*, 2017 WL 1064965, at *6; *Bauer*, 2011 WL 3924963, at *7.

### b.  Class Action Standards

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. To be certified under Rule 23, a class must first satisfy the four threshold requirements of Rule 23(a), including "numerosity," "commonality," "typicality," and "adequacy of representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Fed. R. Civ. P. 23(a)). Plaintiffs also must prove "ascertainability" of the defined class, "an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. National Security Fire & Casualty Company,* 501 F.3d 443, 445 (5th Cir. 2007); *AMP Automotive, LLC v. BFT, LP*, No. 17-cv-5667, 2017 WL 5466817, *4 (E.D. La. Nov. 14, 2017) (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("the proposed class must be adequately defined and clearly ascertainable by reference to objective criteria"). The class definition must be sufficiently definite so it is administratively feasible for the court to determine whether a particular individual is a member. *Sartin v. EKF Diagnostics, Inc.*, 2016 WL 7450471 (E.D. La. Dec. 28, 2016) (quoting Wright & Miller, 7A Federal Practice and Procedure, § 1760 (2d ed.)). "Where it is facially

apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation <u>on the pleadings</u>." *John,* 501 F.3d at 445 (emphasis added).

If the Rule 23(a) prerequisites are met, the proposed class must <u>also</u> satisfy the requirements of either Rule 23(b)(1), (2) or (3). **Rule 23(b)(1)(A)** provides for certification of a mandatory non-opt-out class when "prosecuting separate actions by or against individual class members would create a risk" of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."[4] **Rule 23(b)(2)** allows for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Finally, class certification under **Rule 23(b)(3)** requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### c. Plaintiffs Cannot Certify a Rule 23(b)(3) Class

Rule 23(b)(3)'s "predominance" requirement is "more demanding" than the "commonality" requirement of Rule 23(a). *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see id*. ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a

---

[4] Rule 23(b)(1)(B) is the rule generally used for so called "limited fund" cases. There, a defendant has a limited pool of money from which to pay the claims of all current and potential plaintiffs.

common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof'").

"Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider 'how a trial on the merits would be conducted if a class were certified,'" *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011), which, "in turn, 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials.'" *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008). "Pragmatism is the lodestar of predominance." *Earl*, 2021 WL 4034514 at *18.

Rule 23(b)(3)'s "superiority" requirement mandates consideration of, among other things, the class members' interest in individually controlling their separate actions and the likely difficulties in class management. However, "[t]he Fifth Circuit has noted that there is an important relationship between the superiority analysis and the predominance analysis." *In re Chinese-Manufactured Drywall Products Liab. Litig.*, No. No. 09-cv-4115, 2019 WL 2924135, at *10 (E.D. La. July 8, 2019) (citing *Exxon*, 461 F.3d at 604). Specifically, [w]here common issues do not predominate, any effort to conduct a class action 'would denigrate in practice into multiple lawsuits separately tried.'" *Id*. Stated otherwise, "the predominance of [] individual issues ... detract[]s from the superiority of the class action device…" *Id*. (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. MDL 071873, 2008 WL 5423488, at *15 (E.D. La. Dec. 29, 2008)).

To understand why individualized questions inevitably predominate, class action procedure is not superior, and no amount of discovery can change that, the Court must first consider the class Plaintiffs seek to certify, legal claims asserted, and types of damages alleged:

### i. Plaintiffs' Class Allegations, Legal Claims and Alleged Damages

In their Petition, Plaintiffs claim they intend to seek certification of a class consisting of:

> All persons who are residents, domiciliaries, tenants, and/ or are located in Orleans Parish, **who have suffered and continue to suffer damages** including **property damage and depreciation of their homes** as well as **personal injury as a result of the relocation of the LCMC Health heliport** and who reside in an area bounded by the Mississippi River to the South, both sides of Camp Street to the North; Valmont Street to the East; and Exposition Boulevard to the West.

Petition, ¶ 23. (emphasis added).

Plaintiff's legal claims are nuisance (La. C.C. arts. 667-669, Petition ¶ 28) and negligence (La. C.C. arts. 2315 and 2317, *Id.*) and Plaintiffs allege the following damages (Petition, ¶ 29):

- Hearing loss;
- Sleep disturbance;
- Mental health issues;
- Diminution of property value;
- Property damage;
- Loss of use of their property;
- Cost to remediate their property;
- Physical and mental suffering;
- Inconvenience;
- Past, present and future medical expenses; and
- Past present and future physical and mental pain and suffering.

Plaintiffs have now confined their putative class to persons who have suffered <u>all</u> of the following: personal injury, property damage, **<u>and</u>** depreciation of his/her property value.

### ii. Standards for Nuisance and Negligence Claims Under Louisiana Law

Louisiana "nuisance" claims are governed by La. C.C. arts. 667–669. *Rodrigue v. Copeland*, 475 So. 2d 1071, 1077 (La. 1985). These articles impose on property owners certain legal servitudes known as "obligations of vicinage." *Id.* Louisiana Civil Code article 667 defines nuisance as follows:

8

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, **he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care**.

La. C.C. art. 667 (emphasis added).

The Louisiana Supreme Court has observed articles 667–669 "embody a balancing of rights and obligations associated with the ownership of immovables. As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit ... He may even use his property in ways which '... occasion some inconvenience to his neighbor.' However, his extensive rights do not allow him to do '**real damage**' to his neighbor." *Rodrigue*, 475 So. 2d at 1077. "**When actions or work graduate from inconveniences to real damages is a question of fact**." *Wattigny v. Hoskin Homes L.L.C*., 2018-0297 (La.App. 4 Cir. 11/14/18); 318 So.3d 738, writ denied, 2019-0044 (La. 2/25/19); 266 So.3d 295. (emphasis added). **"[A] factfinder must determine whether an activity occasions real damage or mere inconvenience by considering the reasonableness of the conduct in light of the circumstances. Factors to consider are the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors**." *Id*. (citing *Badke v. USA Speedway, LLC*, 49,060, pp. 16-17 (La.App. 2d Cir. 5/14/14), 139 So.3d 1117, 1126) (emphasis added).

In *Price v. Martin*, 11–0853, p. 6 (La. 12/6/11), 79 So.3d 960, 966, p. 6 the Louisiana Supreme Court held, "under La. C.C. arts. 667–669 [], a <u>factual determination</u> must be made as to the nature and extent of the inconvenience that each plaintiff claims and this determination is a substantive element of liability, not merely an issue of quantum of damages." *Id*. at 974 (citing

*Ford v. Murphy Oil U.S.A., Inc*., 96–2913, 96–2917, 96–2929 (La. 9/9/97), 703 So.2d 542, 549 n.

11) (emphasis added). The court explained:

> Whether an activity or work occasions real damage or mere inconvenience requires consideration of such factors as the character of the neighborhood, the degree of intrusion, and the effect of the activity on the health and safety of the neighbors, **factors which do not lend themselves to resolution on a common, class-wide basis**."

*Id*. at 974 (citing *Barrett v. T.L. James & Co*., 28,170, pp. 6–7 (La.App. 2 Cir. 4/3/96), 671 So.2d

1186) (emphasis added).

Plaintiffs' negligence claim under La. C.C. arts. 2315 is likewise subject to an inherently

individualized "reasonableness" standard. Under Art. 2315, there is a duty "to use 'reasonable

care' [] to avoid injury to another." *Thomas v. Sisters of Charity of the Incarnate Word,* 38,170,

pp. 10–11 (La.App.2d Cir.3/19/04), 870 So.2d 390, 397, *writ denied,* 04–1403 (La.9/24/04), 882

So.2d 1132. Negligence requires the risk be both "unreasonable and foreseeable." *Bridgefield

Casualty Insurance Company v. J.E.S., Inc*., 2009–0725 (La. App. 1st Cir. 10/23/09), 29 So. 3d

570, 573.[5] In addition, "Louisiana's comparative fault statute <u>requires</u> apportioning fault [for

claims under Art. 2315] among all tortfeasors, including those that are not parties to the action."

*Smith v. Kansa Technology, L.L.C.*, No. 16-cv-16597, 2018 WL 3223265, at *2 (E.D. La. July 2,

2018) (citing La. C.C. art. 2323) (emphasis added). Fault must also be apportioned as to nuisance

claims under Arts. 667-669. *See, e.g., Begnaud v. Camel Contractors, Inc*., 98–207, pp. 5–6

(La.App. 3 Cir. 10/28/98), 721 So.2d 550, 555-56, *writ denied*, 98–2948 (La.2/5/99), 738 So.2d 1.

---

[5] La. C.C. art. 2317, which Plaintiffs also cite, likewise requires a finding a defendant "knew or, in the exercise of reasonable care, should have known" something controlled by him would cause another person damage and the damage could have been avoided by exercising "reasonable care." La. C.C. art. 2317.1.

### iii.   Individualized Questions Inevitably Predominate as to <u>Both</u> Damages <u>and</u> Liability

Individualized and fact-specific determinations are required to determine whether a defendant's conduct rises to the level of being a "nuisance" under the above-cited Louisiana jurisprudence, *i.e.*, whether the defendant's conduct was "reasonable" given the circumstances and caused "real damage" or a mere "inconvenience." Here, <u>each plaintiff and putative plaintiff's individual circumstances would have to be examined to determine whether he/she has an actionable claim for "nuisance" due to the relocation of the helistop</u>. This would require a jury to determine, on an individualized basis, whether relocation of Children's Hospital's helistop resulted in nonactionable inconvenience or whether it rose to the level of actionable "real damage" by considering each putative class member's location, living circumstances, ownership status, along with myriad other factors, and whether an ordinary/reasonable person would suffer "real damage" or mere "inconvenience" (or no inconvenience) under each plaintiff's unique circumstances. For example, just because the helistop relocation (and new flight paths) <u>might</u> be considered unreasonable and rise to the level of a "nuisance" for one person does <u>not</u> mean it is an actionable nuisance for someone else. Indeed, some number of putative plaintiffs may believe they <u>benefitted</u> from relocation of the helistop from its prior location. *See, e.g., Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988), *cert. denied*, 490 U.S. 1080 (1989) (noting, in an airport noise nuisance case, some homeowners "may benefit from extra flights and so oppose homeowners differently situated," which is why "courts routinely decline to certify classes in airport-noise cases") (citing *Virginians for Dulles v. Volpe,* 344 F.Supp. 573, 575 (E.D.Va.1972), affirmed in relevant part, 541 F.2d 442 (4th Cir.1976); *Town of East Haven v. Eastern Airlines, Inc.,* 331 F.Supp. 16, 18 (D.Conn.1971), affirmed, 470 F.2d 148 (2d Cir.1972); *Ario v. Metropolitan*

11

*Airports Comm'n,* 367 N.W.2d 509 (Minn.1985); *City of San Jose v. Superior Court of Santa Clara County,* 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701 (1974)).

Once determinations of whether there is an actionable nuisance are made with respect to each and every individual, then would begin the assessment of each and every person's requested damages, also inevitably requiring individualized factual determinations as to both the existence and extent of damages as well as causation (including individualized apportionment of fault under La. C.C. art. 2323). A non-exhaustive list of questions that would have to be individually answered as to each putative class member to determine liability, damages, or both, includes:

- Where does each member live in relation to Children's Hospital's helicopter's landing/takeoff/flight path?

- To what extend has each member actually experienced noise or vibration under their individual circumstances?

    o Does the member and his/her family live in the home full or part-time?
    o How much time does each member spend in the home and during what times of the day?
    o Does the member work from home?
    o How does the member's "lifestyle" impact the effect of alleged helicopter noise/vibration?
    o What is the sleep profile of the member?  Are there other factors that disturb the member's sleep?
    o How is the member's home constructed in terms of noise/vibration insulation?
    o Does the member live near a bar or restaurant, a similar noise-generating business/operation, or something else that muffles noise?

- When did the member buy his/her home?

    o For members who purchased their homes after Children's Hospital started using the new helistop (i.e., after May 18, 2020), was any alleged "nuisance" already factored into the value of the home?
    o To what extent has this lawsuit or a public yard sign decrying the helicopter diminished property values, as opposed to the alleged helicopter noise/vibration?

- How is each member damaged, if at all?

    o Does the member have pre-existing hearing loss or lower hearing ability that makes him/her less affected by noise?

- o  Does the member have other medical conditions that gives him/her a predisposition to be more or less affected and/or injured by noise?
- o  Does the member have physical and emotional injuries resulting from the alleged noise/vibration and, if so, what is the extent of those injuries?
- o  Was helicopter noise/vibration the cause of the member's physical or emotional injury or was the injury caused by something else?
- o  What is the type and extent of any property damage the member allegedly suffered?

Of critical importance, no amount of discovery can change that the nature of the damages alleged and legal claims asserted by Plaintiffs mean <u>all</u> of these questions (and more) would have to be answered on an individualized basis. No expert can present a reasonable, supportable method or formula that allows these questions to be answered on a class-wide basis.  Courts in and outside of the Fifth Circuit have routinely rejected classes with features proposed by Plaintiffs, including by striking class allegations at the pleadings stage. The same result should obtain here.

### iv.  Plaintiffs' Claims for Personal, Emotional and Intangible Injuries are Not Suited for Class Certification Under 5th Circuit Law

The Fifth Circuit has expressed significant opposition to certifying classes when it is clear the types of damages claimed will generate individualized questions related to causation and extent of damages suffered. *Steering Comm. v. Exxon Mobil Corp*., 461 F.3d 598, 602 (5th Cir. 2006) is the seminal Fifth Circuit case on the issue and arose after a fire at a Baton Rouge chemical plant created a smoke plume carried by the wind to the southwest and across the Mississippi River. *Id*. Hundreds of suits were filed asserting various causes of action, including claims for bodily injury, personal discomfort and annoyance, emotional distress, fear of future unauthorized exposures, and economic harm such as damage to business and property. *Id*. The district court denied class certification, and that decision was affirmed on appeal by the Fifth Circuit, which found the predominance requirement of Rule 23(b)(3) had not been satisfied because the nature of the plaintiffs' claims, particularly those involving emotional and other intangible injuries, demonstrated individual issues would predominate over any class issues.

The court expressed its skepticism about treating mass tort incidents as class actions, explaining: "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the [dissimilar] damages issue may predominate over any issues shared by the class"). *Id*. at 601. The court continued:

> It is clear from the record that the damages claims in this case are not subject to any sort of formulaic calculation. Instead, each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result. Some plaintiffs allege both personal and property injuries, while others allege only one or the other. Moreover, many plaintiffs allege as part of their claim for compensatory damages emotional and other intangible injuries. The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards.

*Id*. at 603 (citing *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 417 (5th Cir. 1998)) (internal quotations omitted). *see also Robertson v. Monsanto*, 287 F. App'x 354 (5th Cir. 2008) (holding individualized issues of causation and damages related to personal, emotional and intangible injuries claimed by the plaintiffs precluded class certification and noting that "[a]lthough the alleged cause of the plaintiffs' injuries is a single incident ... each plaintiff still must show that [defendant's] negligence in causing the gas leak was proximately connected to the specific injuries complained of").

The *Steering Committee* court found its determination of a lack of "predominance" was dispositive of the class certification issue: "Because all Rule 23 class-action requirements must be satisfied, and we hold the predominance factor is not, we need not address the superiority factor". *Id*. at 604. Nevertheless, it explained there is an "interrelationship between predominance and superiority." *Id*. The court held, "predominance of individual issues relating to the plaintiffs' claims for compensatory and punitive damages detracts from the superiority of the class action

14

device in resolving these claims," and affirmed the district court's finding that superiority was lacking for the same reasons predominance was lacking. *See id*. at 604-605 (citing *Allison*, 151 F.3d at 419 and *Castano v. American Tobacco Co*., 84 F.3d 734, 745 (5th Cir. 1996)).[6]

### v. Courts Have Stricken Class Allegations <u>on the Pleadings</u> Due to Individualized Causation and Damages Issues

When, as here, it is clear on the face of the pleadings individualized issues of the extent of damages, causation, and liability will predominate, courts grant motions to strike class allegations pre-discovery. In *Bevrotte*, 2011 WL 4634174, at *2, the plaintiff attempted to bring a Rule 23(b)(3) class action on behalf of a class including "all former, current and future nonsmoking employees of [Harrah's New Orleans] who were, are or in the future will be exposed to unsafe levels of second-hand smoke." The court granted the defendant's motion to strike the class allegations on the pleadings pursuant to Fed. R. Civ. P. 23(d)(1)(D), because individualized questions of causation and damages would inevitably predominate:

> Each [plaintiff] would bear the burden of proving that exposure to secondhand smoke during employment at Harrah's Casino was responsible for his or her injuries. The result would be an endless series of time-intensive factual inquiries about each plaintiff, including each's discrete medical history and risk factors; dates, times, and durations of exposure to secondhand smoke at Harrah's, home, and previous places of employment; and concentrations of exposure at Harrah's, home, and previous places of employment. These complicated questions of causation would certainly predominate at trial. Even if causation could be tried collectively, the unique damages claims of each plaintiff would make this case a poor candidate for class treatment.

---

[6] Even outside the context of personal and emotional injuries, courts are reluctant to certify classes in which it is clear damages cannot be calculated using any sort of formula. *See, e.g.*, *Cannon v. BP Products North America, Inc*., No. 10–cv–00622, 2013 WL 5514284, at *15 (S.D. Tex. Sept. 30, 2013) (denying class certification because of "individualized damages issues" presented by the plaintiffs' claim their properties' values were diminished by chemical releases from an oil refinery, and, specifically, "[i]f Plaintiffs proved causation and damages for one plaintiff, they would still have to make the same proof for all the others"); *Bell Atlantic Corp. v. AT&T Corp*., 339 F.3d 294, 306 (5th Cir. 2003) (denying class certification for failure to satisfy Rule 23(b)(3) because there was no formulaic or mathematical way of calculating damages caused by AT&T blocking caller ID signals such that the results would "reasonably approximate the actual damages suffered by the class members").

*Id*. at \*4. The court also noted the plaintiffs' damages claims were "not subject to formulaic calculation," so there would be "no way for the Court to assess individual damages without experts, medical reports, and personal testimony from each plaintiff." *Id*. The court found "[c]lass certification would thus do little to spare judicial resources and much to threaten class cohesion." *Id*. The court therefore concluded the "intertwined" predominance and superiority requirements of Rule 23(b)(3) could not be satisfied. *See id*. at \*5.

In *Coleman*, 2017 WL 1064965, at \*6-7, the court granted the defendant's motion to strike the plaintiffs' class allegations pursuant to Rule 12(f), finding they could not possibly satisfy the requirements of Rule 23(b)(3). The court reasoned, "common issues do not predominate when there are significant factual differences in the class members' injuries and damages" and the plaintiffs failed to allege that they and the putative class member they sought to represent had all suffered the same types of damages. *Id*.

In *Kemp*, 2002 WL 113894, at \*, when presented with a proposed Rule 23(b)(3) class seeking damages for personal injuries, the court granted the defendant's motion to strike the plaintiff's class allegations, finding the requirements of Rule 23 could not be met. The court noted, among other things, "personal injuries are claimed, implicating numerous individual issues of causation, affirmative defenses and damages." *Id*. at \*5.

In *Bauer*, 2011 WL 3924963, at \*7, the plaintiffs sought certification of a Rule 23(b)(3) class and the court granted the defendant's motion to strike the class allegations pursuant to Rule 12(b)(6) "because common issues of liability and damages [did] not predominate over individual issues with respect to liability and damages." Even though some damages (like overcharges) could be calculated using a formula, the court found emotional damages and other damages sought by the plaintiffs could not be determined using a formulaic calculation:

> Clearly there would be no common issue with respect to the issue of entitlement to
> emotional damages. The inquiry into entitlement to emotional damages would
> require fact-intensive inquiry with respect to each individual borrower. There could
> be no class wide determination of that element of damages.

*Id*. at 7. The court therefore concluded the plaintiffs could not establish the predominance

requirement of Rule 23(b)(3). *See id*.

In *Lauteman*, 2019 WL 3037934, at *1, the court granted a motion to strike class allegations

in a nuisance class action due to individualized issues as to both damages and liability. The

plaintiffs sued a company that rents electric scooters, alleging the scooters were routinely left on

their property in an unsafe manner and on sidewalks adjacent to their property. *See id*. The

plaintiffs brought nuisance and trespass claims against the defendant, alleging the placement of

scooters on or near their property interfered with their use and enjoyment of their property. The

court granted the defendant's motion to strike class allegations pursuant to Fed. R. Civ. P. 12(f),

disagreeing with the plaintiffs' argument that the question of whether the defendant's conduct

constituted a nuisance was common to the putative class members. *See id*. at *5-7. The court

explained, to state a private nuisance claim under California law, a plaintiff must show the

defendant created (or had active involvement in creating) a condition that was harmful to health

or interfered with the comfortable enjoyment of life or property; an ordinary person would be

reasonably annoyed or disturbed by the condition; the seriousness of the harm outweighs the social

utility of the defendant's conduct; the plaintiff did not consent to the conduct; the plaintiff suffered

harm that was different from the type of harm suffered by the general public; and the defendant's

conduct was a substantial factor in causing the plaintiff's harm. *See id*. at *6. Applying that

standard, the court found the plaintiffs could not possibly satisfy the commonality requirement of

Fed. R. Civ. P. 23(a)(2), because "the nature of Plaintiff's claims, for trespass and nuisance, is

such that class members will have suffered different injuries, if they were injured at all." *Id*. at *5.

The court identified numerous questions that would be highly individualized, including whether the defendant's conduct interfered with each class member's use or enjoyment of his or her property, the nature of the interference, whether the interference was substantial and objectively unreasonable (which, the court noted, would depend on the surroundings), and the proximity of each class member's property to the scooter hubs (the "nests"). *See id*. at *7.

### vi. Denials of Class Certification Under Very Similar Circumstances Show Early Dismissal is Appropriate Here

In a number of cases, courts have denied motions for class certification due to the same issues present here and, importantly, those courts were not persuaded by any evidence (expert or otherwise) presented by plaintiffs that inherently individualized issues could somehow be avoided. These decisions demonstrate why the class should be dismissed at this stage rather than after significant time and resources have been expended.

In *Powell v. Tosh*, No. 09-cv-00121, 2013 WL 4418531, at *8-12 (W.D. Ken. Aug. 2, 2013), the court decertified a class of plaintiffs who asserted a nuisance claim based on an allegation that the operation of certain barns near their properties caused noxious odors and decreased their property values. *See id*. at *1-3. The court began its analysis by noting Kentucky law had both "subjective" and "objective" components with respect to determining what constitutes a nuisance, and neither could be satisfied. *See id*. at *5-8. With respect to the objective component, the court explained:

> … each named Plaintiff's and unnamed class member's property is situated uniquely with respect to the barns in question. Despite that Plaintiffs' odor experts have taken into account wind speed and direction, topography, and other such variables, the question of reasonableness cannot be answered objectively for the class as a whole when Kentucky law and the facts of this case necessarily require a highly individualized inquiry into the experience of each Plaintiff and his situation relative to the Defendants.

*Id.* at *8. The court did not cite <u>any</u> evidence in concluding the objective component required to prove nuisance liability under Kentucky law (<u>exactly</u> as under Louisiana law) necessitated consideration of factors "impossible for a jury to consider [] on a classwide basis" and therefore could not be resolved with a common answer. *See id.* The court thus found neither rule 23(a)'s "commonality" requirement, nor Rule 23(b)(3)'s stricter "predominance" requirement could be satisfied. *See id.* at *3-12. The court concluded, "… neither the question whether the class members subjectively claim to have suffered a substantial annoyance or interference, nor the question whether that annoyance or interference was objectively unreasonable can be resolved 'in one stroke.'" *Id.* at *9.[7]

The court also found Rule 23(a)(3)'s "typicality" requirement was not satisfied for largely the same reasons:

> [each named plaintiff's and putitive class member's] property is situated uniquely with respect to the barns in question. And **although the Plaintiffs' odor experts have taken into account many (or even assuming all) of the multitude of variables relative to the respective locations of those properties and the [] barns, under Kentucky law, the resolution of whether the Defendants' barns constitute a permanent nuisance necessarily still requires a highly individualized inquiry** … That is, even assuming any or all of the named Plaintiffs were to prove their claims, they would not, by virtue of the necessarily individualized inquiry required, prove the claim of any other named Plaintiff or class member.

*Id.* at *10 (emphasis added).

In *Benefield v. International Paper Co.*, 270 F.R.D. 640, 642 (M.D. Ala. Oct. 20, 2010), the plaintiffs sued the operator of a paper manufacturing facility, alleging the facility discharged hazardous substances into the environment resulting in property damage to properties within a two-mile radius of the facility. The plaintiffs moved for certification of a class consisting of

---

[7] Of course, Plaintiffs' claims here require even more individualized inquires than in *Powell* because, unlike here, the *Powell* plaintiffs did not assert highly individualized damages claims for personal injuries and property damages.

persons who owned property within a two-mile radius of the facility and suffered damages in the form of diminution of their property values. *See id*. The court denied the motion, stating it agreed with the defendant's position that the assertion of a private nuisance claim on behalf of the class "undermines the predominance requirement of Rule 23(b)(3)." *Id*. at *650. The court explained the "most significant issue" with respect to predominance was the plaintiff's inability "to prove causation and damages on a class-wide basis." *Id*. The court found none of the expert opinions offered by the plaintiffs could change the fact that "individualized determinations [would] have to be made of whether each class member has suffered injury and whether that injury was proximately caused by the Defendant's actions." *Id*. at 651.

In *Church v. General Electric Co*., 138 F.Supp.2d 169, 171 (D. Mass. 2001), the plaintiffs were property owners who brought a nuisance claim against General Electric, alleging it dumped waste-containing chemicals into the land surrounding one of its plants, and the contaminants ultimately reached the plaintiffs' properties. The plaintiffs moved for certification of a Rule 23(b)(3) class consisting of all persons who owned residential property near General Electric's plant. *See id*. at 180-81. The court denied the plaintiffs' motion, finding, in light of the elements required to prove a nuisance claim, "the individual issues are prevalent enough that the class vehicle cannot be considered superior one for this case." *Id*. at 181. The court explained, to establish a private nuisance under Massachusetts law, plaintiffs must prove "an unreasonable interference with the use and enjoyment of the property," something that could not be proven on a class-wide basis given the "individual characteristics of each plaintiff's property." *Id*. at 182. The court emphasized: "These differences pertain not just to damages, as plaintiffs argue, but to the threshold question of whether the contamination constitutes a nuisance []." *Id*. The court found there was "no guarantee that every recorded level of [chemical] contamination suffered by the

members of the proposed class, no matter what the land's characteristics or what it is typically used for, is necessarily of sufficient gravity to constitute a nuisance []," so class certification was not appropriate. *Id.*

In *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459, 115 Cal.Rptr. 797, 525 P.2d 701, a trial court's order certifying a class action against a municipal airport related to nuisance caused by noise, vapor, dust and vibration was vacated. In evaluating the suitability of the action for class treatment, the court stated: "each member must not be required to individually litigate numerous and substantial questions to determine his right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." *Id.* at p. 460. The court observed: "An approaching or departing aircraft may or may not give rise to actionable nuisance or inverse condemnation depending on a myriad of individualized evidentiary factors. While landing or departure may be a fact common to all, liability can be established only after extensive examination of the circumstances surrounding each party. Development, use, topography, zoning, physical condition, and relative location are among the many important criteria to be considered. No one factor, not even noise level, will be determinative as to all parcels." *Id.* at p. 461. The court explained: "Then, because liability is here predicated on variables like the degree of noise, vapor, and vibration, the problem is compounded by the factors of distance and direction affecting these variables. The result becomes a statistical permutation, and the requisite number of subclassifications quickly approaches the total number of parcels in the class. Under such circumstances, there is little or no benefit in maintaining the action as a class." *Id.* at p. 462.

### vii.   Plaintiffs' Class is Not Ascertainable

Plaintiffs themselves define their class to include only individuals who have suffered personal injuries, property damage, and depreciation of their property value as a result of the noise and vibrations allegedly caused by Abby. It would therefore be impossible for the Court to apply "objective criteria" that make it "administratively feasible" to determine whether a particular individual is a member of the class. Instead, membership could only be determined through highly individualized, fact-specific determinations relating to the merits of each putative class member's claims, as described in detail above.[8]

### d.   A Rule 23(b)(2) Class Cannot be Certified

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that **the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them**." *Valentine v. Collier*, No. 20-cv-1115, 2020 WL 3491999, at *13 (S.D. Tex. June 27, 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360, 131 S.Ct. 2541 (2011)) (emphasis added). The Fifth Circuit has held Rule 23(b)(2) certification requires: "(1) **class members must have been harmed in essentially the same way**; (2) **injunctive relief must predominate over monetary damage claims[9]**; and (3) the injunctive relief sought must be specific." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (internal quotations omitted) (quoting *Maldonado v. Ochsner Clinic Found*., 493 F.3d 521, 524 (5th Cir. 2007)) (emphasis added).

"The Fifth Circuit has determined that monetary relief predominates in Rule 23(b)(2) class actions unless it is 'incidental' to the requested injunctive and declaratory relief. *Swanson v. Perry*,

---

[8] Failure to show ascertainability is fatal to Rule 23(b)(2) and (b)(1) classes as well.

[9] "The Supreme Court has held Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'" *Baricuatro v. Industrial Personnel and Mgmt. Servs., Inc*., No. 11-cv-2777, 2013 WL 607270, *19 (E.D. La. Nov. 18, 2013) (citing *Dukes*, 131 S.Ct. at 2557).

22

No. 01-cv-0258, 2002 WL 324283, at *2 (N.D. Tex. Feb. 27, 2002), *aff'd*, 69 Fed. Appx. 658 (5th Cir. May 29, 2003) (citing *Allison*, 151 F.3d at 415). "Incidental damages" are damages "whose calculation does not require new and individualized factual or legal determinations and should be in the nature of a group remedy. Rather, they are those damages that flow automatically once liability is established." *Id*. (citing *Allison*, 151 F.3d at 415).

Plaintiffs cannot possibly meet these standards for several reasons. First, Plaintiffs' request for monetary relief on behalf of themselves and the class they seek to represent clearly predominates over their request for injunctive relief. Plaintiffs allege <u>eleven</u> types of injuries for which they seek to recover money damages. Petition, ¶ 29. They have recently confined their putative class to only of those who have suffered three different types of damages (including personal injury, property damage, and deprecation of home value). *See* Exhibit "A," p. 9. Obviously, the damages Plaintiffs seek are not the types of "incidental" damages that "automatically flow" from a finding of liability. Plaintiffs do not seek a "group remedy" with respect to damages. Instead, these types of damages require individualized determinations for each plaintiff (for the reasons detailed above).

Plaintiffs inevitably cannot satisfy the requirements of a Rule 23(b)(2) class that (1) the defendant's conduct can be declared unlawful as to either the entire class or as to none of them, and (2) "class members must have been harmed in essentially the same way." And, relatedly, certification of a class under Rule 23(b)(2) would inevitably create a conflict of interest within the class because putative plaintiffs have no right to opt-out of Rule 23(b)(2) classes, *Johnson*, 208 F. App'x at 296, so individuals who fall within Plaintiffs' class definition who have no interest in challenging the noise caused by a medical emergency helicopter for children, or who believe they

would be harmed by relocation of the helistop, would be forced into a class that opposes their own interests.

### e.   A Rule 23(b)(1) Class Cannot be Certified

The U.S. Supreme Court has held:

> [Rule 23(b)(1)(A)] takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), quoted in *Robinson v. Wal-Mart Stores, Inc*., 253 F.R.D. 396, 401 (S.D. Miss. 2008). Thus, in order to justify certification under Rule 23(b)(1)(A), the party seeking certification must show inconsistent adjudications would cause the defendants to be unable to satisfy the judgments entered in some of the claims filed against them without contradicting the terms of other judgments entered with respect to the remaining claims. *See Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. App'x 350, 354 (5th Cir. Oct.13, 2005). The possibility that the parties opposing class certification might be found liable to some of the claimants but not liable to others is insufficient to justify Rule 23(b)(1)(A) certification. *See Robinson*, 253 F.R.D. at 401 (citing *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1192 (9th Cir. 2001)).

As noted by the court in *Huber v. BioScrip Infusion Services*, "the Fifth Circuit has held that certification under Rule 23(b)(1)(A) is 'seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs.'" No. 20-cv-2197, 2021 WL 1313411, *8 (E.D. La. April 8, 2021) (citing *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010)); *see also Lopez v. Progressive County Mutual Ins. Co*., No. 19-cv-00380, 2020 WL 6391214, at *4 (W.D. Tex. Nov. 2, 2020) (noting "many courts have held that Rule 23(b)(1)(A),

which seeks to prevent 'inconsistent or varying adjudications,' does not apply to actions seeking compensatory damages").

With respect to whether the injunctive relief requested by a plaintiff can present a risk of imposing incompatible standards of conduct on a defendant, the Fifth Circuit has held such a risk is only created if it is possible one court would *require* the defendant to do something while another court would *require* the defendant *not* to do something. *See Casa Orlando Apartments, Ltd.*, 624 F.3d at 197-98. If the only risk is that one court would require the defendant to do something and another court would not require the defendant to do the same thing, that does not present a risk of imposing incompatible standards of conduct on a defendant. *See id*.

Plaintiffs cannot meet these standards because: (1) their request for monetary relief clearly predominates, and (2) there is no risk of judgments by different courts imposing conflicting obligations on Children's Hospital. Under *Casa Orlando*, even if one court ordered Children's move its helistop and another court did not order Children's do so, those judgments would not impose "incompatible standards of conduct" on Children's Hospital within the meaning of Rule 23(b)(1)(A). Under *Casa Orlando*, "incompatible standards of conduct" would only be imposed if one court ordered Children's Hospital to move its helistop and another court affirmatively ordered it <u>not</u> to move its helistop. Finally, the mandatory non-opt-out nature of a Rule 23(b)(1) class only emphasizes the inequity and inappropriateness of such a class under these circumstances.

## **CONCLUSION**

For the foregoing reasons, Children's Hospital requests the Court strike Plaintiffs' class allegations with prejudice.

Respectfully submitted:

/s/ Leslie W. Ehret
Peter E. Sperling (La. Bar No. 17812)
psperling@frilot.com
Leslie W. Ehret (La. Bar No. 18494)
lehret@frilot.com
Benjamin M. Castoriano (La. Bar No. 31093)
bcastoriano@frilot.com
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-1000
Facsimile: (504) 599-8100

and

Kerry J. Miller (La. Bar No. 24562)
Loretta G. Mince (La. Bar No. 25796)
Michael R. Dodson (La. Bar No. 37450)
Fishman Haygood LLP
201 St. Charles Ave. # 4600,
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2021, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel who are CM/ECF participants.

/s/ Leslie. W. Ehret