UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOMAS REY, *et al.*                                      CIVIL ACTION

VERSUS                                                  NO. 21-1188

LCMC HEALTHCARE PARTNERS,                               SECTION M (1)
LLC, *et al.*

**ORDER & REASONS**

Before the Court is a motion *in limine* filed by defendants LCMC Healthcare Partners, LLC, Louisiana Children's Medical Center, Children's Hospital, and LCMC Health Holdings, Inc. (collectively, "Defendants"), seeking to exclude Arno Bommer's expert opinions and testimony and to bar any other expert testimony and opinions offered on plaintiffs' behalf.[1] Plaintiffs Tomas Rey, Melisa Rey, Robert Denny, Victoria Emmerling, and Nicole Williamson (collectively, "Plaintiffs") respond in opposition,[2] and both sides reply in further support of their respective positions.[3] Also before the Court is Defendants' motion for summary judgment,[4] to which Plaintiffs respond in opposition,[5] and both sides reply in further support of their respective positions.[6] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

I.      **BACKGROUND**

This matter concerns complaints of noise caused by the operation of a patient-transport helicopter to and from a helistop at Children's Hospital in uptown New Orleans. Children's

---

[1] R. Doc. 105.
[2] R. Doc. 120.
[3] R. Docs. 124; 138; 139.
[4] R. Doc. 106.
[5] R. Doc. 123.
[6] R. Docs. 125; 134; 136.

Hospital is a non-profit pediatric medical center that, since 1955, has operated as the Gulf South's only freestanding, comprehensive hospital for children.[7]  The hospital maintains a helicopter, known as "Abby," that transports critically ill and injured children from across the state and region to the facility to receive life-saving care that cannot be provided elsewhere.[8]  Prior to May 18, 2020, Abby was operated from a helipad atop a one-story surgery building on the river side of the hospital complex and next to one of the hospital's towers.[9]  In December 2018, John Nickens, the president and CEO of Children's Hospital, decided to relocate the helipad to the top of the newly-built "Infill Tower."[10]  The Infill Tower is six stories high and "in the middle of [the hospital's] campus."[11]  The City of New Orleans, the Louisiana Department of Transportation, and the Federal Aviation Administration ("FAA") granted the required approvals.[12]  The FAA "certified the new helipad's location, coordinates, dimensions, obstruction clearance and approved flight paths to and from the new helipad."[13]  On May 18, 2020, Defendants opened the new helipad and the old one atop the surgery center was decommissioned.[14]

Plaintiffs, five residents who live near Children's Hospital, filed this action in state court as a putative class action alleging that Abby's new helipad and flight path afflict them with unacceptable levels of noise and vibration.[15]  They allege that the helicopter's flights directly over their homes and its takeoffs and landings from the heliport adjacent to the neighborhood "at all hours of the day and night … emit deafening sounds and vibrations significant enough to cause

---

[7] R. Doc. 106-1 at 2.
[8] *Id.* at 1.
[9] *Id.* at 3-5, 7.
[10] *Id.* at 7.  The parties dispute how and why the decision was made to move the helipad.  *See* R. Docs. 106; 123.  That dispute is immaterial to the resolution of the pending motions.
[11] R. Doc. 106-1 at 5.
[12] *Id.* at 7, 8 n.5.
[13] *Id.* at 7.
[14] *Id.*
[15] R. Doc. 1-1 at 5.

physical and mental discomfort, property damage, and annoyance," and thus constitute a nuisance.[16]  Plaintiffs seek an injunction requiring Defendants to move the heliport back to its old location or to another area that will not continue to damage and interfere with the enjoyment of their property.[17]  Alternatively, they seek an injunction requiring Defendants to abate the helicopter noise and vibrations.[18]  Plaintiffs also seek damages for personal injury and property damage under Louisiana Civil Code articles 667, 668, and 669 (nuisance) and articles 2315 and 2317 (negligence).[19]  Specifically, Plaintiffs contend that they have sustained the following items of damages: (1) hearing loss; (2) sleep disturbance; (3) mental health issues; (4) diminution of property value; (5) property damage; (6) loss of use of their property; (7) cost to remediate their property; (8) physical and mental suffering; (9) inconvenience; (10) past, present, and future medical expenses; and (11) past, present, and future physical and mental pain and suffering.[20]

Defendants removed the action from state court to this Court asserting federal-question subject-matter jurisdiction on the premise that Plaintiffs' claim for injunctive relief, which seeks to compel the relocation of the heliport, is preempted by federal law, specifically, the Federal Aviation Act ("FAA"), 49 U.S.C. §§ 40101 *et seq.*[21]  In their notice of removal, Defendants also invoked diversity subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[22]

Plaintiffs moved to remand.[23]  The Court denied the motion, holding that CAFA provided diversity jurisdiction over this action under 28 U.S.C. § 1332, and thus, it was unnecessary for the

---

[16] *Id.*
[17] *Id.* at 9.
[18] *Id.*
[19] *Id.* at 9-10.
[20] *Id.* at 10.
[21] R. Doc. 1 at 1, 3-7.
[22] *Id.* at 2, 7-12.
[23] R. Doc. 11.

Court to analyze whether it also had federal-question jurisdiction under 28 U.S.C. § 1331.[24] Plaintiffs then asked the Fifth Circuit for leave to appeal, which the appellate court denied.[25]

Thereafter, Plaintiffs amended their complaint to remove the class-action allegations and moved this Court to decline supplemental jurisdiction under 28 U.S.C. § 1332 since the basis for jurisdiction under CAFA no longer existed.[26] The Court denied the motion, holding that Plaintiffs' dismissal of the class-action allegations plainly amounted to forum shopping and that jurisdiction was appropriately exercised under § 1367.[27]

Defendants then moved for partial judgment on the pleadings, arguing that the Plaintiffs' request for a permanent injunction was preempted by the FAA.[28] The Court denied the motion without prejudice, permitting Defendants to reassert the arguments in an appropriate motion following discovery.[29]

Next, Defendants moved to dismiss all claims of this lawsuit pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the noise and vibration resulting from helicopter operations at their helistop do not constitute actionable nuisance because the noise level complies with local ordinances.[30] Plaintiffs countered with a motion to strike Defendants' motion to dismiss as untimely pursuant to Rule 12(g) of the Federal Rules of Civil Procedure.[31] The Court denied both motions, finding that Plaintiffs' claims were not ripe for resolution on the face of the pleadings.[32]

---

[24] R. Doc. 30.
[25] R. Doc. 39.
[26] R. Docs. 42; 62.
[27] R. Doc. 62 at 5.
[28] R. Doc. 52.
[29] R. Doc. 62 at 7.
[30] R. Doc. 67.
[31] R. Doc. 74.
[32] R. Doc. 82.

Now that discovery has been conducted, Defendants file the instant motion *in limine* and motion for summary judgment.[33]   In the motion *in limine*, Defendants argue that Bommer, Plaintiffs' sound expert, should be precluded from testifying because his opinions and methodology do not satisfy *Daubert*.[34]   Defendants also argue that Plaintiffs should be precluded from offering expert opinions from any other witness because they failed to produce expert reports or summaries in compliance with Rule 26 of the Federal Rules of Civil Procedure.[35]   Defendants also move for summary judgment, contending that Plaintiffs' claim for injunctive relief is preempted by the FAA and they cannot prevail on the nuisance and negligence claims for damages.[36]

## II.    LAW & ANALYSIS

### A.  Defendants' Motion *In Limine*

#### 1.  Arno Bommer

Plaintiffs retained Arno Bommer, a consultant with Collaboration in Science and Technology Inc., to serve as an acoustics expert.[37]   In 1982, Bommer received a bachelor's of science degree in architectural design from the Massachusetts Institute of Technology and has worked as an acoustical consultant ever since.[38]   He is a member of the Acoustic Society of America and is board certified by the Institute of Noise Control Engineering.[39]   Bommer has "designed walls and ceilings to improve noise isolation and/or speech privacy" for various types

---

[33] R. Docs. 105; 106.
[34] R. Doc. 105-1 at 4-13.
[35] *Id.* at 13-14.
[36] R. Doc. 106-1 at 11-24.
[37] R. Doc. 105-2.
[38] *Id.* at 4, 22.
[39] *Id.*

of buildings, including residences.[40]    He has contributed to numerous publications and has previously testified as an expert witness.[41]

In this case, Bommer attempted to measure the impact of the noise from Defendants' helicopter using what he refers to as "a common method" that compares "the level of the intruding sounds with the ambient sound level."[42]  He explains that "[a]n increase of 10 dBA [(A-weighted decibels)] is typically perceived as being about twice as loud and is used by some regulatory agencies to define a significant increase."[43]    Bommer cites six ordinances or guidelines that were not promulgated in Louisiana and do not relate to aviation that "define a noise impact as 10 dBA above ambient."[44]  Using this method, Bommer took sound readings at several locations at various times in the summer of 2021 and purports to show that the noise level increased significantly when Defendants' helicopter was in operation.[45]    Bommer explains that numerous factors contribute to the noise level at the various locations, such as the distance from the helipad and obstructions that block the noise.[46]  Ultimately, Bommer opines that:

> Noise from hospital helicopter operations is loud and pervasive throughout the neighborhood north of the hospital within about 1300 ft of the helipad.  The levels of sound are much greater than ambient sound levels and exceed common guidelines.  They are sufficiently loud to cause annoyance and aggravation, to interfere with the use of property outside residences, and to interfere with sleep within residences.  This can reduce property values and adversely affect learning and health.  It is my judgment that sound levels from [the helicopter] are more probable than not to constitute a nuisance to people of normal sensitivities.  To prevent this, significant reduction of sound levels must be achieved either by relocating the helipad and flight paths and/or by significantly modifying the residences for improved sound isolation.[47]

---

[40] *Id.* at 22.
[41] *Id.* at 23-24.  Defendants do not generally contest that Bommer is qualified to testify as an acoustics expert. *See* R. Doc. 105-1.
[42] R. Doc. 105-2 at 6.
[43] *Id.*
[44] *Id.* at 6-7.
[45] *Id.* at 9-17, 19-20.
[46] *Id.*
[47] *Id.* at 21.

Bommer offers the following suggestions for noise control: use quieter helicopters, move the helipad oriented away from the residences, refuel the helicopter at the helipad to reduce flights, use different flight paths away from the neighborhood, and modify the residences for better sound isolation with certain types of windows, walls, doors, vents, and roofs.[48]

Defendants seek to preclude Bommer from testifying at trial because, say Defendants, he failed to use a proper methodology and ensure that his noise-impact opinions were supported by the facts.[49] Defendants first argue that Bommer failed to establish that the noise from the helicopter is excessive in light of local ordinances, specifically, the New Orleans Comprehensive Zoning Ordinance and New Orleans Noise Ordinance (the "city noise ordinance")[50] that does not use a 10 dBA standard and from which emergency vehicles are exempt, and FAA noise regulations that employ the day-night average sound level (DNL) to measure sound, which is a different measure than the one used by Bommer.[51] Defendants further argue that the "common method" Bommer used, isolating the single-event noise (supposedly Defendants' helicopter) from ambient sound, "is what the on-point FAA standard is designed to avoid."[52] Next, Defendants contend that Bommer

---

[48] *Id.* at 17-19.

[49] R. Doc. 105-1 at 1, 5-11.

[50] The city noise ordinance provides that the sound level limit for a residential area is between 60 $L_{10}$ dBA and 70 $L_{max}$ dBA from 7:00 a.m. to 10:00 p.m., and between 55 $L_{10}$ dBA and 60 $L_{max}$ dBA from 10:00 p.m. to 7:00 a.m. CODE OF THE CITY OF NEW ORLEANS § 66-202 (2025). "$L_{10}$ means the A-weighted sound pressure level which is exceeded ten percent of the time period during which the measurement is made." *Id.* § 66-136. "$L_{max}$ means the A-weighted sound level allowed." *Id.* "Noises resulting from any authorized emergency vehicles when responding to an emergency" are exempt from the sound level limits. *Id.* § 66-138(2). "Emergency vehicles" are defined as "authorized publicly or privately owned ambulances, or motor vehicles belonging to a fire or police department, or to any federal, state, parish or municipal agency provided such vehicles are in use as emergency vehicles by one authorized to use such vehicles for that purpose." *Id.* § 66-136. "*Emergency* means any occurrence or set of circumstances involving actual or eminent [*sic*] physical trauma or property damage which demands immediate attention." *Id.* (emphasis in original).

[51] R. Doc. 105-1 at 5-10. DNL "means the 24-hour average sound level, in decibels, for the period from midnight to midnight, obtained after the addition of ten decibels to sound levels for the periods between midnight and 7 a.m., and between 10 p.m., and midnight, local time." 14 C.F.R. § 150.7. Aircraft noise at a level below 65 DNL is considered compatible with all land uses. *See id.* § A150.101 & Table 1. "The DNL is the standard form of noise measurement employed by the FAA, the United States Department of Housing and Urban Development, the Department of Defense, and other federal agencies." *Zbitnoff v. James*, 2016 WL 4251047, at *5 (D. Vt. Aug. 10, 2016), *aff'd*, 708 F. App'x 25 (2d Cir. 2017).

[52] R. Doc. 105-1 at 8.

failed to ensure that sound spikes were emanating from the Defendants' helicopter, and Plaintiffs' attorneys, not Bommer, chose residences at which sound was measured, meaning that Bommer cannot say that his measurements were representative of every single residence in the neighborhood.[53]  Finally, Defendants urge that Bommer cannot offer opinions in "areas on which he is not an expert or failed to conduct any expert analysis, such as health and medical conditions, property values, home remediation and aviation safety."[54]  At his deposition, say Defendants, Bommer admitted that: (1) he is not a real estate expert and has not determined whether Plaintiffs experienced a reduction in their property values; (2) he is not a medical doctor or an expert on whether the noise caused any specific medical condition in any Plaintiff; (3) he has not inspected Plaintiffs' residences to determine what noise-reduction modifications would be appropriate or the cost of such work; and (4) he is not an aviation expert and cannot opine on the feasibility of moving the helipad back to its old location, changing flight paths, or using the helipad only for specific purposes.[55]

Plaintiffs respond in opposition, arguing that Bommer's use of the "common method" to quantify noise was appropriate because it captured the effects of the "short, high-intensity helicopter noise events," which the DNL does not accurately measure in terms of noise impact.[56] Plaintiffs explain how Bommer conducted his test and advocate that the test was appropriate to measure "ambient conditions without helicopters and during helicopter takeoffs and landings" at different locations to determine the effect the sudden noise has on the residents.[57]  Plaintiffs also

---

[53] *Id.* at 10-11.

[54] *Id.* at 1, 11-13 (quote at 1).

[55] *Id.* at 11-13.

[56] R. Doc. 120 at 3-4, 6-7 (quote at 3).  Plaintiffs spend a lot of time discussing the testimony of Defendants' corporate representative, Evan Bertucci, and Defendants' sound expert, Eugene M. Reindel.  *Id.* at 3-7.  Because the testimony of Bertucci and Reindel is not relevant to determining whether Bommer may testify as an expert, the Court need not discuss it.

[57] *Id.* at 8-9 (quote at 8).

contend that the FAA regulations do not apply to the private heliport at issue.[58]  Plaintiffs say that the "question of the reliability of the application of the methodologies is dependent upon the credibility of the results, which is a weight issue."[59]  Further, Plaintiffs argue that Bommer is qualified to testify as to ways to remediate the noise, which, in his opinion, ultimately involves moving the helipad back to its old location.[60]  Finally, Plaintiffs urge that Bommer did not need to consider the New Orleans noise ordinance because injunctive relief is available when excessive noise amounts to an abuse of property rights.[61]

In reply, Defendants contend that Plaintiffs failed to "establish by a preponderance of the evidence that Mr. Bommer's methodology and opinions are reliable and supported by the facts."[62]  Defendants again emphasize that Louisiana law requires the suppression of noise only if it is excessive under local ordinances or customs, and Bommer failed to consider those ordinances in rendering his opinions, particularly that the New Orleans Department of Health "has rejected application of the [city noise] ordinance to [Defendants'] helicopter operations."[63]  Defendants continue to assert that the DNL standard employed by the FAA is the correct measure of aviation noise and that Bommer cited "five obscure state or regulat[ory] provisions governing noise other than aviation no[i]se" and failed to explain how they apply here.[64]  Moreover, say Defendants, Plaintiffs failed to show that Bommer's opinions are reliable and supported by the facts because he testified that he did not verify whether the noise spikes he measured came from Defendants'

---

[58] *Id.* at 4-5.
[59] *Id.* at 10.
[60] *Id.* at 9-10.
[61] *Id.* at 10-13.
[62] R. Doc. 124 at 1.  Defendants point out that Plaintiffs "spend the majority of their opposition" critiquing Reindel and the FAA's noise-impact methodology, neither of which, say Defendants, make Bommer's opinions reliable. *Id.*
[63] *Id.* at 2-3 (quote at 3).
[64] *Id.* at 3-5 (quote at 5).

helicopter.[65]  Further, Defendants urge that, under Rule 702, "the sufficiency of an expert's basis and the application of the expert's methodology" go to the admissibility of the testimony, not just its weight.[66]  Defendants also maintain that Plaintiffs did not "establish that Mr. Bommer can offer opinions on areas on which he is not an expert or failed to conduct any expert analysis," such as property values, health effects, sleep disturbances, residential sound modifications, or aviation related topics.[67]

In their surreply, Plaintiffs reurge that Bommer's method and the DNL are both appropriate measures of noise, but that Bommer's way is superior for the issue at hand.[68]  Plaintiffs also state that Bommer did not need to calculate whether the helicopter violated the city noise ordinance.[69]

In a sur-surreply, Defendants again argue that Bommer's methodology is unreliable because he did not establish that the helicopter noise is excessive under the city noise ordinance, a custom, or standard practice.[70]  Defendants assert that Bommer's "common method" is not "custom and standard practice," but instead relies on "five obscure regulations dealing with construction, wind farms, and other non-aviation noise to justify its use."[71]  And again, Defendants contend that the DNL is the customary method for measuring aviation noise.[72]  Finally, Defendants note that "Plaintiffs do not address in their sur-reply why Mr. Bommer's expert opinion on matters on which he is not an expert or did not conduct any expert analysis should be excluded."[73]

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow*

---

[65] *Id.* at 5-6.
[66] *Id.* at 2.
[67] *Id.* at 1-2, 6-7 (quote at 2).
[68] R. Doc. 138 at 1-2, 4.
[69] *Id.* at 3.
[70] R. Doc. 139 at 2.
[71] *Id.*
[72] *Id.*
[73] *Id.* at 4 n.3.

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the

Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and

all scientific testimony or evidence admitted is not only relevant, but reliable."  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if the proponent
> demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods
> to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology

underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 592-93.  In *Daubert*, the

Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability:

(1) whether the theory has been tested; (2) whether the theory has been subjected to peer review

and publication; (3) the known or potential rate of error; and (4) the general acceptance of the

methodology in the scientific community.  *Id.* at 593-95.  However, a court's evaluation of the

reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may

not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular

expertise, and the subject of his testimony."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

(1999) (quotations omitted).  In sum, the district court must ensure "that an expert, whether basing

testimony upon professional studies or personal experiences, employs in the courtroom the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at

152.  The party offering the testimony must establish its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant.  *Daubert*, 509 U.S. at 591.  An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony."  *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).  Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact."  *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified.  Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact.  *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020).  A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion.  *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'"  *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow*

*Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction.  Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all."  *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).  "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate.  At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible."  *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted).  Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'"  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

Here, Bommer is qualified to testify as an expert in acoustics.  While his methodology differs from that employed by Defendants' expert and the FAA, the Court cannot say that it was an improper means to measure the effects of the helicopter noise on the surrounding neighborhood. That the FAA standard (DNL) has been applied by other courts, *see Seattle Cmty. Council Fed'n v. FAA*, 961 F.2d 829, 833 (9th Cir. 1992); *Hausrath v. U.S. Dep't of the Air Force*, 491 F. Supp. 3d 770, 788 (D. Idaho 2020); *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 152 F. Supp. 3d 90, 110-11 (E.D.N.Y. 2015), and "'courts have consistently upheld the [FAA's] discretion to choose its cumulative noise impact methodology [DNL] instead of single-event noise analysis'" when the agency evaluates the noise impact of aircraft, *Citizens of the Ebey's Rsrv. for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1079-80 (W.D. Wash. 2015) (quoting *City of Bridgeton v. FAA*, 212 F.3d 448, 460 (8th Cir. 2000)), does not mean that the DNL is the only way to measure the impact of aviation noise for purposes of a state-law nuisance claim.  Defendants do not cite, and the Court is not aware of, any cases applying the

FAA's DNL to such claims. Moreover, Bommer's failure to calculate whether the noise complied with the city noise ordinance is not fatal to the admissibility of his testimony. As discussed later in this opinion, the city noise ordinance is but one factor that is considered in determining whether the helicopter is a nuisance under state law, so Defendants' compliance or noncompliance with it is not determinative. Defendants can address the differences between Bommer's methodology, and the methodology and measure used by their expert, the FAA, and the city noise ordinance, through vigorous cross-examination and the presentation of countervailing expert testimony.

More concerning is Bommer's failure to verify that the sound spikes he measured emanated from Defendants' helicopter. Bommer admitted in his deposition that he did not use the flight logs provided by Defendants to verify whether the supposed helicopter noise recorded during his study was actually produced by a helicopter at all, much less Defendants' helicopter.[74] This lapse may reduce the reliability of Bommer's testimony, but it does not undermine it completely. Again, Defendants can employ vigorous cross-examination and countervailing expert testimony to expose this hole in Bommer's opinions.

Lastly, the Court does hold that Bommer cannot offer opinions on topics for which he is not an expert or failed to conduct any expert analysis. In his deposition, Bommer admitted that he did not conduct any analysis concerning what noise-remediation modifications could be made on the Plaintiffs' homes and he is not giving an opinion on that topic.[75] He also admitted that he is not a real estate expert and has not analyzed whether the Plaintiffs' property values decreased as a result of Defendants' relocation of the helipad.[76] Further, Bommer testified that he is not a medical doctor or expert on whether the helicopter noise caused any specific medical condition in any

---

[74] R. Doc. 105-3 at 5.
[75] *Id.* at 25.
[76] *Id.* at 26.

plaintiff.[77]  And, finally, Bommer has no expertise in aviation.[78]   Accordingly, because Bommer lacks expertise or did not perform any expert analysis in these areas, he cannot offer any expert testimony in the areas of property valuation as a function of the helicopter noise, health effects of the helicopter noise, sleep disturbances caused by the helicopter noise, residential sound modifications to abate the helicopter noise, or aviation-related topics, such as the feasibility of moving the helipad back to its old location, changing flight paths, or using the helipad only for specific purposes.

### 2.  Other Experts

Defendants move to exclude any expert opinions and testimony from individuals not properly disclosed by Plaintiffs pursuant to Rule 26.[79]  Defendants indicate that, save for Bommer, Plaintiffs did not disclose or produce under Rule 26(a)(2)(B) reports for any retained experts, nor did Plaintiffs provide proper disclosures for any non-retained experts pursuant to Rule 26(a)(2)(C).[80]  However, say Defendants, Plaintiffs' witness list "discloses several individuals whose description of testimony could be expert opinions although the cryptic summaries make that unclear."[81]  Specifically, the witness list says that: Dr. Mario Sicassa, Helen Cappo, Malies Harold Counseling, and Debbie Granier will testify for plaintiff Melisa Rey about "[m]ental health issues associated with helicopter noise"; Dr. Michael Darrin will testify about a "[s]leep study to help Melisa Rey find ways to manage her sleep"; architect Gregory J. Hackenberg will testify about "[a]coustic recommendations"; and Brien Rau of Rau Builds, LLC will testify about "[e]stimates for acoustic recommendation work" and "the remediation work performed on the

---

[77] *Id.* at 27.
[78] *Id.* at 22.
[79] R. Doc. 105-1 at 13-14.
[80] *Id.* at 13.
[81] *Id.*

[Reys'] house, including sound proofing."[82]  Defendants argue that, to the extent any of the healthcare providers or therapists are being called to offer medical causation opinions, their testimony should be excluded because Plaintiffs did not provide the disclosures required by Rule 26(a)(2)(C).[83]  Similarly, Defendants contend that, "to the extent [Hackenberg and Rau] are being called to offer acoustic analysis and recommendations and whether they could be applied to Plaintiffs' residence[s] or other residences," those witnesses should be excluded because Plaintiffs did not provide Rule 26(a)(2)(B) reports or Rule 26(a)(2)(C) disclosures.[84]  Finally, Defendants assert that Plaintiffs cannot elicit expert opinions from Bill Davis, the president of Heliport Systems, Inc. ("Heliport Systems"), because Plaintiffs did not produce a Rule 26(a)(2)(B) expert report for Davis or disclose him as a non-retained expert under Rule 26(a)(2)(C).[85]  Defendants are concerned that Plaintiffs seek to use Davis as an expert because Plaintiffs state in their witness list that Davis will testify about topics that Defendants say "clearly require expert opinions," such as "moving the helistop to its original location and reducing flights," as well as "the FAA's involvement with the noise associated with landings and take offs."[86]  Defendants represent that their concern stems from Plaintiffs' prior request for an extension of time to obtain an expert report from Davis, which idea Plaintiffs abandoned in favor of Davis being a fact witness when Defendants objected to the requested extension.[87]  Defendants further explain that Davis testified as Heliport Systems' corporate representative in a deposition taken pursuant to Rule 30(b)(6) of

---

[82] R. Doc. 99 at 8-9.  All the healthcare providers and therapists are said to have treated plaintiff Melisa Rey. R. Doc. 120 at 16-17.
[83] R. Doc. 105-1 at 13.
[84] *Id.*
[85] *Id.* at 14.
[86] *Id.* (quoting R. Doc. 99 at 5).
[87] *Id.*

the Federal Rules of Civil Procedure, and as such, say Defendants, any attempt by Plaintiffs to use that deposition as the basis for expert testimony would be improper.[88]

Plaintiffs oppose the motion, arguing that Melisa Rey "disclosed all medical providers who treated her for sleep disturbances and stress and anxiety from the helicopter noise in her initial response to discovery in April of 2022 and in a second set of discovery sent by [Defendants]."[89] Plaintiffs state that Defendants obtained Dr. Rebekah A. Byrne's[90] and Harold's records for their treatment of Melisa Rey, which contain their respective opinions that Defendants' helicopter is a cause of her anxiety and sleep issues.[91]  Plaintiffs also say that "Melissa [sic] Rey provided a detailed explanation of her medical treatment in her responses to discovery and deposition" and that "[h]er medical records note her history, diagnosis and treatment."[92]  As to Hackenberg and Rau, Plaintiffs contend that they met their discovery obligations by sending Defendants' counsel "all of the architecture plans, estimate and work performed, including the acoustical work."[93] Further, with respect to Davis, Plaintiffs assert that they "notified [Defendants' counsel] by email that Bill Davis would be called as an expert witness, attaching his Rule 26 testimony list and curriculum vitae" and that "Davis further disclosed all of his opinions in his deposition."[94]

In reply, Defendants reurge that Plaintiffs did not properly disclose Melisa Rey's healthcare providers and therapists or Hackenberg and Rau as retained or non-retained experts, and as such, none of them can offer expert testimony.[95]  Defendants explain that production of the medical records and construction contract documents in discovery is insufficient to satisfy the mandates of

---

[88] Id. at n.6.
[89] R. Doc. 120 at 16 (citing R. Doc. 120-9).
[90] Dr. Byrne is not named on Plaintiffs' witness list.  See R. Doc. 99.
[91] R. Doc. 120 at 16-17 (citing R. Docs. 120-10; 120-11).
[92] Id. at 17.
[93] Id.
[94] Id. at 13.
[95] R. Doc. 124 at 8-9.

Rules 26(a)(2)(B) or (C).[96]  As to Davis, Defendants reassert that Plaintiffs' counsel asked for an extension of the expert report deadline on the due date to obtain a report from Davis, but abandoned the idea when Defendants' counsel objected to the extension.[97]  Defendants also reiterate that Davis was deposed as Heliport Systems' corporate representative under Rule 30(b)(6), not as an individual.[98]  In sum, Defendants contend that Davis can offer no expert opinions because Plaintiffs did not properly disclose him as a retained or non-retained expert.[99]

Plaintiffs again claim in their surreply that production of Melisa Rey's medical records and "the completed remediation specifications for the renovation" are sufficient to prevent prejudice to Defendants.[100]  Plaintiffs also argue that they should be able to use Davis as an expert witness, even without a report, because Defendants were going to use him as an expert and relied on him "for every facet of its original and new helistop."[101]  Plaintiffs further assert that they referred to Davis's deposition because he "could not be forced to provide a report" and his opinions were previously disclosed to Defendants.[102]

In their sur-surreply, Defendants reassert that Davis was not properly disclosed as an expert under either Rule 26(a)(2)(B) or (C), and that Plaintiffs' reference to Helistop Systems' corporate deposition does not suffice to make Davis an expert.[103]  Defendants also say that their own consulting relationship with Davis does not "render him an expert" witness.[104]  Further, Defendants reurge that production of Melisa Rey's medical records is insufficient under Rule 26 to put them "on notice that the medical providers would be experts" because they "should not have to guess as

---

[96] *Id.*
[97] *Id.* at 7.
[98] *Id.*
[99] *Id.*
[100] R. Doc. 138 at 5-6.
[101] *Id.* at 4-5.
[102] *Id.*
[103] R. Doc. 139 at 4.
[104] *Id.*

to who Plaintiffs may call as non-retained experts or what opinions they may or may not offer many of which, such as causation, may not be stated in the medical records."[105]  Defendants state that the same logic applies to Hackenberg and Rau.[106]  In sum, Defendants contend that they "should not be required to depose multiple medical providers and contractors to determine what their opinions are and guess whether they will provide expert rather than fact testimony at trial," because "Rule 26 and this Court's Scheduling Order require more."[107]

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the disclosure of expert testimony.  The rule provides a distinction between the type of report required of a retained expert – someone with no prior knowledge of the case who is enlisted to provide expert testimony – and a non-retained expert – a witness whose testimony arises from his or her "ground-level involvement in the events giving rise to the litigation."  *AX Wireless LLC v. Dell Inc.*, 2024 WL 1495784, at *1 (E.D. Tex. Apr. 5, 2024) (quotation omitted).  The party sponsoring the testimony must demonstrate whether its experts are retained or not.  *Id.*

A retained expert is required to prepare and sign an expert report pursuant to Rule 26(a)(2)(B).  The report must contain: "a complete statement of all opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in formatting them"; "any exhibits that will be used to summarize or support them"; "the witness's qualifications, including a list of all publications authored in the previous 10 years"; "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition"; and "a statement of the compensation to be paid for the study and testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

---

[105] *Id.* at 5.
[106] *Id.*
[107] *Id.*

Prior to 2010, non-retained experts were exempt from Rule 26's expert reporting requirements. *See Tucker v. United States*, 2019 WL 4198254, at *2 (E.D. La. Sept. 4, 2019). In 2010, Rule 26(a)(2)(C) was added, which provides a modified disclosure requirement applicable to non-retained experts, such as treating physicians. *Id.* Rule 26(a)(2)(C) requires that a party, with respect to a non-retained expert, provide a written disclosure, in lieu of a report, stating: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

A Rule 26(a)(2)(C) disclosure "need not be extensive," but must include "an abstract, abridgement, or compendium of the opinion *and* facts supporting the opinion." *Causey v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2234749, at *2 (E.D. La. May 16, 2018) (quotation omitted; emphasis in original); *see AX Wireless*, 2024 WL 1495784, at *1 (stating that "when a party fails to provide a meaningful summary of the facts and opinions forming the basis of a non-retained expert's testimony, the disclosure is insufficient" (quotation, internal quotation marks, and alteration omitted)). Although "the rule does not require overly comprehensive disclosure … it does require disclosure in at least *some* form" in order "to provide opposing parties the opportunity to prepare for effective cross-examination and to arrange for testimony from other experts, if necessary." *Causey*, 2018 WL 2234749, at *2 (emphasis in original); *see also Collett v. Weyerhaeuser Co.*, 512 F. Supp. 3d 665, 672 (E.D. La. 2021) ("In lieu of a report, the treating physician's records, summaries of the treatment, or a letter or summary report is produced containing information sufficient to allow opposing counsel to understand the scope of the expected testimony and supplement the information with a pretrial deposition."), *aff'd*, 2022 WL 2387352 (5th Cir. July 1, 2022).

Rule 37(c)(1) states that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) …, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Further, this Court's scheduling order states that "[t]he Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown."[108] The Fifth Circuit has outlined a four-factor standard to determine whether the failure to meet Rule 26 disclosure requirements was substantially justified or is harmless. *Williams v. Louisiana*, 2015 WL 5438596, at *5 (M.D. La. Sept. 11, 2015) (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996)). "To avoid abusing their discretion, courts must: (1) examine the importance of the witness's testimony; (2) consider the prejudice, if any, to the opposing party of allowing the witness to testify; (3) decide whether there is a possibility of curing such prejudice by granting a continuance; and (4) consider the explanation, if any, for the party's failure to comply with the discovery requirements." *Id.* (citing *Sierra Club*, 73 F.3d at 572).

Plaintiffs utterly failed to comply with Rules 26(a)(2)(B) and (C) with respect to disclosing Davis, Hackenberg, Rau, and Melisa Rey's healthcare providers and therapists, whether as retained or non-retained experts. With respect to Davis, Plaintiffs do not deny that they did not obtain an expert report from Davis, but rather baldly state that sending Davis's curriculum vitae and "Rule 26 testimony list" to defense counsel constitutes a sufficient disclosure because Davis was deposed.[109] The lack of a Rule 26(a)(2)(B) expert report is fatal to Plaintiffs' misguided attempt to use Davis as a retained expert. Moreover, Davis cannot testify as a non-retained expert because

---

[108] R. Doc. 93 at 3.
[109] R. Docs. 120 at 13; 138 at 4-5.

Plaintiffs provided no meaningful summary of the facts and opinions forming the basis of Davis's testimony as would satisfy Rule 26(a)(2)(C), "[a]nd referral to depositions is not an adequate substitute for the summary required by Rule 26." *AX Wireless*, 2024 WL 1495784, at *1 (quotation omitted). Plaintiffs offer no explanation for their failure and the Court sees no good cause to excuse them from complying with Rule 26. Thus, although Davis may testify as a fact witness, Plaintiffs may not attempt to elicit expert opinions from him.

Plaintiffs also failed to provide Rule 26(a)(2)(C) summaries of the expected testimony from Melisa Rey's healthcare providers and therapists. Instead, Plaintiffs insist that providing the records from these witnesses is sufficient "to provide notice of the nature and extent of the testimony that is going to be offered."[110] It is not. "Providing medical records and expecting defendants to search for the opinions that may be contained therein does not satisfy Rule 26(a)(2)(C)." *Matthews v. Amtrust Grp., Ins.*, 2020 WL 206186, at *2 (E.D. La. Jan. 14, 2020). To allow such a practice places the onus on Defendants to search the medical records for any causation opinions and the supporting facts, which opinions, say Defendants, are not present in the medical records.[111] Again, Plaintiffs offer no explanation for their failure and the Court sees no good cause to excuse them from complying with Rule 26. Accordingly, none of Melisa Rey's healthcare providers or therapists can offer causation opinions as an expert, although they can testify about any causation determination necessary to and made during the course of Melisa Rey's treatment, if contained in the medical records.[112] *See Rea v. Wis. Coach Lines, Inc.*, 2014 WL 4981803, at *5-6 (E.D. La. Oct. 3, 2014) (excluding treating physician's causation opinions that

---

[110] R. Docs. 120 at 16-18 (quote at 17-18); 139 at 6-7.

[111] R. Doc. 105-1 at 13.

[112] Because she was not included on the witness list, Dr. Byrne may not testify at all. *See* R. Doc. 99; *see also* R. Doc. 93 at 3 (the scheduling order required witness and exhibit lists to be filed by August 20, 2025, and states that "[t]he Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown").

were not established by the medical records when plaintiff failed to comply with the disclosure requirements of Rule 26(a)(2)(C).

Lastly, it is unclear from the cryptic entries on the witness list whether Hackenberg and the contractor Rau are being offered by Plaintiffs as retained or non-retained experts. Regardless, they cannot testify as either type of expert because Plaintiffs failed to provide a Rule 26(a)(2)(B) report or a Rule 26(a)(2)(C) disclosure with respect to these witnesses. And, again, Plaintiffs offer no explanation for such failure and the Court sees no good cause to excuse them from complying with Rule 26. As with the other improperly disclosed purported experts, the architect and contractor can testify as fact witnesses, if appropriate, but Plaintiffs cannot elicit any expert opinions from them.[113]

## B. Defendants' Motion for Summary Judgment

### 1. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets

---

[113] The Court will not attempt to rule in a vacuum as to what these witnesses can or cannot say, but instead will rule on contemporaneous objections lodged at trial.

that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such

facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. FAA preemption

Defendants move for summary judgment on Plaintiffs' request for a preliminary injunction requiring them to relocate the helipad and change the flight paths to abate the noise, arguing that such a remedy is preempted by the FAA, because both moving the helipad and changing flight paths affect federally controlled airspace.[114] Defendants point to the testimony of Bertucci and Heliport Systems and the report of Keith Cianfrani, their aviation expert, to support their argument.[115] Bertucci, say Defendants, testified that "the FAA determined the primary and secondary routes to and from the helipad based on historical wind patterns, obstructions, and helipad orientation."[116] And Helipad Systems, which "designed, constructed and installed the new helipad at [Children's Hospital] testified about the FAA approval process for the relocated helipad," involving the FAA's "evaluat[ion] whether the proposed flight paths conflict with flight paths from other airports or helipads and … confirm[ation] that there are no obstructions that the helicopter can hit using those flight paths."[117] Then the FAA issues a letter of determination.[118]

---

[114] R. Doc. 106-1 at 11-15.
[115] *Id.* at 13-14.
[116] *Id.* at 13.
[117] *Id.*
[118] *Id.*

Defendants observe that aviation expert Cianfrani, in his report, explains that, before the helipad could be moved back to its old location, the FAA would have to conduct a new airspace study, and approval is not guaranteed, because the old helipad has been decommissioned for five years during which time circumstances could have changed.[119]

In their opposition, Plaintiffs argue that their request for an injunction arises from their state-law nuisance claim, which they say is not preempted by the FAA.[120]  Plaintiffs contend that their request for injunctive relief is not preempted because they "do not seek to control flight paths, altitudes, or airspace management," but "[r]ather, they challenge a discretionary land-use decision: [Defendants'] choice to relocate [their] helipad from a buffered site to the rooftop of a tower adjacent to homes," which, say Plaintiffs, make "[t]he resulting noise and nuisance … questions of state property law, not federal preemption."[121]   While Plaintiffs acknowledge that FAA regulations preempt state laws affecting airspace, they assert that the case law recognizes that state and local authorities have control over land use for airports and heliports and allows for state-law nuisance claims related to noise.[122]  Plaintiffs cite testimony from Bertucci, Heliport Systems, and Cianfrani, which they claim supports their theory that the FAA does not regulate helipad noise or site selection.[123]   Plaintiffs further admit that they "are not seeking to eliminate helicopter operations or impede patient care," but instead, "[t]hey seek only to require that the helipad be located in a place that balances hospital needs with community welfare" in accord with local land-use regulations and state nuisance law.[124]

---

[119] *Id.* at 13-14.  Defendants also argue that Plaintiffs cannot meet their burden to secure a mandatory permanent injunction.  *Id.* at 14-15.  The Court need not discuss this because the Court finds that Plaintiffs' request for an injunction is preempted by the FAA.
[120] R. Doc. 123 at 10-16.
[121] *Id.* at 10.
[122] *Id.* at 10-11.
[123] *Id.* at 12-14.
[124] *Id.* at 16.

In reply, Defendants reurge that Plaintiffs' request for a mandatory injunction is preempted.[125] Defendants explain that their "motion does not argue that the FAA regulations preempt state law nuisance and negligence claims or local land use regulation, such as zoning and permitting."[126] But "[r]ather, [Defendants] argue[] only that FAA regulations preempt Plaintiffs' request for a mandatory injunction that [Defendants] be ordered to 'relocate [their] heliport' and otherwise abate noise from helicopters by relocating the helipad, which would necessarily implicate FAA airspace and require FAA approval."[127] Defendants also point out that Plaintiffs' injunction request is preempted by the FAA because: "(1) Plaintiffs testified that the flight paths were an issue; and (2) the relocation of the helipad necessarily involves the FAA approving flight paths to and from the helipad."[128] Again, Defendants contend that moving the helipad would "require the FAA to conduct an aeronautical study to determine if the flight paths to the old pad conflict with existing flight paths or obstructions in the area, some of which could have been put in place during the previous five years."[129]

Plaintiffs file a surreply reasserting that they only challenge Defendants' land-use decision on relocating the helipad and do not seek to control flight paths, altitudes, or airspace.[130] Plaintiffs acknowledge, however, that an injunction requiring a change in flight paths to abate noise is one component of their claim.[131] Additionally, Plaintiffs admit that "the FAA may be involved in reviewing flight paths" for a helipad but, say Plaintiffs, that involvement does not warrant preemption of their request for an injunction because "the process is straightforward" for Defendants to "simply resubmit its proposed flight paths, and the FAA would either object or not

---

[125] R. Doc. 125 at 2-6.
[126] *Id.* at 2.
[127] *Id.* at 2-3.
[128] *Id.* at 3.
[129] *Id.* at 5.
[130] R. Doc. 134 at 2.
[131] *Id.* at 2-3.

object."[132]  Plaintiffs further maintain that the siting of helipads is a matter of local concern that is not preempted by the FAA.[133]

In their sur-surreply, Defendants argue that, although "Plaintiffs admit that the FAA would be involved in reviewing flight paths to and from the relocated helipad," they downplay this involvement without disputing "that the relocated helipad would not be allowed to operate unless and until the flight paths were not objected to (approved) by the FAA."[134]  Defendants again cite evidence – namely, Heliport Systems' testimony – of the necessity of the FAA's involvement in approving the location of the helipad.[135]

The analysis must begin with a discussion of preemption.  The Supreme Court has explained:

> The Supremacy Clause provides that "the Laws of the United States" (as well as treaties and the Constitution itself) "shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Congress may consequently pre-empt, *i.e.,* invalidate, a state law through federal legislation.  It may do so through express language in a statute.  But even where … a statute does not refer expressly to pre-emption, Congress may implicitly pre-empt a state law, rule, or other state action.

> It may do so either through "field" pre-emption or "conflict" pre-emption.  As to the former, Congress may have intended "to foreclose any state regulation in the *area,*" irrespective of whether state law is consistent or inconsistent with "federal standards."  In such situations, Congress has forbidden the State to take action in the *field* that the federal statute pre-empts.

> By contrast, conflict pre-emption exists where "compliance with both state and federal law is impossible," or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" In either situation, federal law must prevail.

---

[132] *Id*. at 3.
[133] *Id.* at 4-5.
[134] R. Doc. 136 at 2.
[135] *Id.* at 2-3.

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376-77 (2015) (internal citations omitted; emphasis in original). Defendants here advocate for the application of "field preemption."

Field preemption of "areas that have been traditionally occupied by the States" occurs only where "congressional intent to supersede state laws [is] clear and manifest." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (quotations omitted); *see also City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 643 (1973) (Rehnquist, J., dissenting) (recognizing that "noise regulation has traditionally been an area of local, not national, concern"). Courts do not "infer preemption from the comprehensiveness of regulations" because "agencies normally address problems in a detailed manner and … we can expect that they will make their intentions clear if they intend for their regulations to be exclusive." *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 717-18 (1985). Absent clear field preemption, state and local authorities may identify additional needs or impose further requirements in a federally regulated field. *Id.* at 717. However, once a court determines that field preemption applies, it must then determine whether the state law at issue falls within the scope of the preemption. *Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011). "The key question is thus at what point the state [law] sufficiently interferes with federal regulation that it should be deemed pre-empted." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992).

As noted in *Lewis v. Bell Helicopter Textron, Inc.*, "[c]ases addressing preemption in the context of suits [related to air transportation] or airports commonly involve a state or local government that, using its police powers, passes a law or ordinance regulating the operation of an airport or air carrier." 2015 WL 3542887, at *4 (Tex. App. June 4, 2015). This case, like *Lewis*, instead "involves a different scenario" whereby Plaintiffs seek to use state "nuisance laws that do

not expressly mention or address aviation to regulate" the location of a heliport and the helicopter flight paths. *Id.*

Defendants do not contend that Plaintiffs' nuisance claim is entirely preempted by the FAA. Indeed, Plaintiffs' nuisance claim for damages is not. *See, e.g., id.*, at *8-9 (refusing to hold that the FAA preempted plaintiffs' state-law nuisance claim for damages caused by helicopter noise); *Wood v. City of Huntsville*, 384 So. 2d 1081, 1084-85 (Ala. 1980) (holding that a private nuisance action related to helicopter noise was not preempted by the FAA). Rather, Defendants argue that Plaintiffs' requested injunctive relief is preempted. The question presented, then, is: if Plaintiffs prove that the helicopter is a nuisance under Louisiana law, can this Court issue an injunction requiring Defendants to relocate their helipad and reroute their helicopter flights to abate noise? The answer is resoundingly no.

The FAA states that "[t]he United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). The administrator of the FAA is charged with "develop[ing] plans and policies for the use of navigable airspace and assign[ing] by regulation or order the use of the airspace necessary to ensure the safety of aircraft[136] and the efficient use of airspace." *Id.* § 40103(b)(1). That duty includes "prescrib[ing] air traffic regulations on the flight of aircraft (including regulations on safe altitudes) for (A) navigating, protecting, and identifying aircraft; (B) protecting individuals and property on the ground; (C) using the navigable airspace efficiently; and (D) preventing collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects." *Id.* § 40103(b)(2).

---

[136] "Aircraft" is defined as "any contrivance invented, used, or designed to navigate, or fly in, the air." 49 U.S.C. § 40102(a)(6). "[T]he term 'aircraft' includes helicopters which are designed and used to fly in the air." *United States v. Greene*, 2013 WL 5488653, at *15 (E.D. Tenn. Sept. 30, 2013).

These statutes clearly "indicate that the federal government has exclusive sovereignty over assigning the use of the United States airspace in order to efficiently use the airspace and to protect individuals and property on the ground." *Lewis*, 2015 WL 3542887, at * 6 (citing *City of Burbank*, 411 U.S. at 633-34). As such, due to field preemption, this Court certainly cannot issue an injunction requiring Defendants to change their helicopter flight paths to abate noise under the auspice that the noise is a nuisance under Louisiana law.

The murkier question is whether this Court can issue an injunction requiring Defendants to move the helipad if it is determined to be a nuisance. Courts have held that state and local authorities are empowered to enact ordinances regulating the location of airports and helipads. *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 697 (7th Cir. 2005) (holding that "[t]he siting of an airfield – so long as it does not interfere with existing [air] traffic patterns, etc. – remains an issue for local control" because the court was not "convinced that Congress meant to take the siting of air fields out of the hands of local officials"); *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 783 (6th Cir. 1996) (distinguishing between "the United States' sovereign regulation of the airspace over the United States and the regulation of aircraft in flight" and "the regulation of the designation of plane landing sites, which involves local control of land … use"); *Thul v. State*, 657 N.W.2d 611, 619 (Minn. App. 2003) (holding that the ordinance at issue was not preempted by the FAA "because regulating the location of heliports has been determined to be within the province of local governments"); *City of Cleveland v. City of Brook Park*, 893 F. Supp. 742, 751 (N.D. Ohio 1995) (stating that the FAA has the "authority to regulate the use of airspace, but this does not of necessity lead to the conclusion that localities are no longer free to regulate the use of land within their borders, even where land use regulations may have some tangential impact on the use of airspace"); *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 219 (8th Cir. 1990) (stating

that the court saw "no conflict between a city's regulatory power over land use, and the federal regulation of airspace, and ha[d] found no case recognizing a conflict").  However, this case does not involve a state or local ordinance regarding the siting or location of a helipad.  Instead, Plaintiffs rely on a private action under Louisiana nuisance law to attempt to force Defendants to move the helipad.  In *Wood v. City of Huntsville*, the court upheld the issuance of an injunction prohibiting the defendant from operating a helicopter from his home because it was determined to be a nuisance.  384 So. 2d at 1082-85.  Thus, it appears that this Court could, under state nuisance law, enjoin Defendants from operating a helipad on their property if the equities favor Plaintiffs.  *See Badke v. USA Speedway, LLC*, 139 So. 3d 1117 (La. App. 2014) (upholding an injunction prohibiting the operation of a racetrack as a nuisance); *see also Par. of E. Feliciana ex rel. E. Feliciana Par. Police Jury v. Guidry*, 923 So. 2d 45, 51 (La. App. 2005) (upholding an injunction prohibiting the operation of a motocross track as a nuisance).  But Plaintiffs expressly state that they "are not seeking to eliminate helicopter operations or impede patient care."[137]  And the parties have not cited, nor is the Court aware of, any case in which a court has issued an injunction under state nuisance law requiring a helipad, particularly a hospital helipad, to be moved.

So what we are left with is the determination that the FAA preempts any state or local law that would affect airspace, but it does not preempt any state or local laws regulating land use.  Here, the requested injunction – to move the helipad – would affect airspace.  Although the relocated helipad would still be on Defendants' property, it would be in a different location and the flight paths would necessarily be different, even if only slightly.  As explained by Bertucci, Heliport Systems, and Cianfrani, the FAA is involved in approving the location of a helipad by conducting an aeronautical airspace study to examine whether the proposed flight paths interfere with existing

---

[137] R. Doc. 123 at 16.

air traffic patterns.[138]   Depending on the results of that study, the FAA then issues a letter of determination, either objecting or not objecting to the location of the helipad.[139]   Cianfrani further states in his report that approval is not guaranteed, even for the Defendants' old helipad, because it has been decommissioned for five years and flight paths, airspace use, and obstructions in the area could have changed in the interim.[140]   Plaintiffs have offered no countervailing evidence. Plaintiffs try to downplay the FAA's involvement in the approval of helipad locations by labeling the application and approval process as "straightforward," but they admit that the FAA is involved in reviewing flight paths.[141]   Plaintiffs position seems to be that the Court should be able to issue the requested injunction because FAA will likely allow a helipad relocation to the former site as, in their view, that would involve minimal change to the flight paths.   However, the amount of change to the flight paths – especially from a lay vantage point – is immaterial.   The FAA would still need to be involved in determining that the flight paths to and from the relocated helipad do not conflict with other airspace use.   And it is this impingement on airspace that is fatal to Plaintiffs' injunction request.   *See Lewis*, 2015 WL 3542887, at *7 (holding that a court cannot compel a new flight path as a remedy for nuisance through the application of state law because the federal government occupies the field of flight path regulation).   Accordingly, Defendants' motion for summary judgment is granted as to Plaintiffs' request for injunctive relief, and that claim is DISMISSED WITH PREJUDICE.

---

[138] R. Docs. 106-2 at 11-12 (Bertucci deposition); 106-5 at 7-8, 12-13 (Heliport Systems deposition); 106-6 at 10-11 (Cianfrani report).
[139] R. Doc. 106-5 at 7.
[140] R. Doc. 106-6 at 10-11.
[141] R. Doc. 134 at 2.

3. **Nuisance claim for damages**

   a. **Viability of the claim**

Defendants argue that Plaintiffs' nuisance claim fails as a matter of law.[142]  Defendants say that they cannot be liable for nuisance because Louisiana Civil Code article 669 "only allows suppression of certain inconveniences if they are *excessive* under local ordinances or customs," and their helicopter, as an emergency vehicle, is exempt from the city noise ordinance, meaning that Plaintiffs cannot prove that the helicopter noise is excessive under a local ordinance or custom.[143]  Defendants also point out that Plaintiffs' sound expert, Bommer, did not calculate the noise from the Defendants' helicopter operations in light of the city noise ordinance, and that the New Orleans Department of Health has opined that the helicopter is exempt from the ordinance when it is responding to an emergency.[144]  Defendants further contend that "[t]he FAA regulates permissible levels of noise from general aviation operations, and it is undisputed that the noise emanating from [their] heliport and helicopter is well within the levels permitted by the FAA."[145]  Defendants support that argument by citing to the opinions of their sound expert, Reindel, and the testimony of Heliport Systems, which was the company involved in designing the heliport.[146]  In summary, Defendants conclude that "Plaintiffs' nuisance claim must be dismissed as a matter of law," because, "[a]t most, the alleged noise emanating from the helicopter is nothing more than an inconvenience permissible under [article] 669."[147]

Plaintiffs respond in opposition, arguing that the FAA regulations do not establish a permissible noise threshold for hospital helicopter operations and, in their view, Bommer's method

---

[142] R. Doc. 106-1 at 15-20.
[143] *Id.* at 16, 18-19 (emphasis in original).
[144] *Id.* at 18-19.
[145] *Id.* at 17.
[146] *Id.* at 17-18.
[147] *Id.* at 20.

34

appropriately measured the impact of the helicopter noise on the neighborhood.[148]  Plaintiffs also argue that Defendants' helicopter is exempt from the city noise ordinance only when it is responding to emergencies, and Defendants have not identified "which specific flights were true emergency responses and which were not," meaning that, in Plaintiffs' view, "Defendants cannot establish as a matter of law that the [city] [n]oise [o]rdinance is inapplicable."[149]  Plaintiffs further contend that Defendants' "compliance with zoning or noise regulations does not immunize their operations from nuisance liability," and "[w]hether the helicopter operations at issue rise to [the] level [of nuisance] requires a fact-intensive inquiry," which precludes summary judgment.[150]  Additionally, Plaintiffs assert that there are disputed issues of material fact concerning whether Defendants knew or should have known that relocating the helipad to its current location would cause Plaintiffs real damages or excessive inconvenience.[151]

In their reply, Defendants reassert that Plaintiffs' nuisance claim fails as a matter of law because Defendants have "firmly established that any noise is not excessive under local ordinances and customs" and Plaintiffs have not presented any evidence to show that it is.[152]  Defendants also reurge that courts have adopted the FAA's method for calculating noise, as have Reindel and Heliport Systems.[153]  Further, Defendants point out that Plaintiffs have not "cite[d] to any record evidence to describe or measure the noise [about] which Plaintiffs complain."[154]

In their surreply, Plaintiffs contest Defendants' assertion that courts, Reindel, and Heliport Systems have accepted the FAA's method for calculating noise but insist, nonetheless, that any

---

[148] R. Doc. 123 at 17-19.  Most of Plaintiffs nuisance arguments relate to the availability of injunctive relief. *Id.* at 14-20.
[149] *Id.* at 19.
[150] *Id.* at 19-20.
[151] *Id.* at 21-22.
[152] R. Doc. 125 at 6-9 (quote at 7).
[153] *Id.* at 7-8.
[154] *Id.* at 7.

such acceptance by a court does not apply to preclude "state-law nuisance claims against a privately owned helipad."[155]

In their sur-surreply, Defendants once again say that Plaintiffs' nuisance claim fails as a matter of law because they do not "present any reliable and valid evidence that the aviation noise they complain of is excessive under local ordinance or custom as required by Louisiana nuisance law."[156] They also reurge that the DNL is the proper standard for measuring aviation noise, as attested by Reindel and Heliport Systems.[157]

Claims for nuisance are governed by the vicinage articles 667 through 669 of the Louisiana Civil Code. Article 667 states in pertinent part:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 667. Article 668, however, appears to place a limit on the conduct actionable under article 667, as it implies that mere inconvenience is noncognizable: "Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor." *Id.* art. 668. Finally, notwithstanding article 668's seeming tolerance of inconveniences, article 669 states:

> If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are

---

[155] R. Doc. 134 at 5-6 (quote at 6).
[156] R. Doc. 136 at 3.
[157] *Id.* at 3-4.

regulated, their sufferance must be determined by the rules of the police, or the customs of the place.

*Id.* art. 669.

Louisiana's vicinage articles thus "'embody a balancing of rights and obligations associated with the ownership of immovables.'" *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 374 (E.D. La. 2022) (quoting *Badke*, 139 So. 3d at 1126).  While a landowner has wide latitude to "'exercise his rights of ownership in any manner he sees fit'" and may subsequently cause some inconvenience to neighbors, activities cannot cause "'real damage to his neighbor.'"  *Id.* (quoting *Badke*, 139 So. 3d at 1126).  Article 667 "prohibits uses which cause damage to neighbors or deprive them of the enjoyment of their property, while [article] 668 permits uses which merely cause neighbors some inconvenience.  [Article] 669 allows suppression of certain inconveniences if excessive under local ordinances or customs, and requires tolerance of lesser inconveniences."  *Barrett v. T.L. James & Co.*, 671 So. 2d 1186, 1190 (La. App. 1996).  "A finding of liability under [a]rticle 667 requires either proof of personal injury or physical damage to property or proof of the presence of some type of excessive or abusive conduct."  *Myers v. Union Carbide Corp.*, 2022 WL 17092121, at *4 (E.D. La. Nov. 21, 2022) (quotation and alteration omitted).

"With the exception of the 'ultrahazardous' activities of pile driving and blasting with explosives – neither of which is at issue here – a claim under any or all of these three Code articles requires a showing of negligence."  *Id.*  Thus, to prevail on a nuisance claim under any or all of these articles, a plaintiff must prove that "a defendant is: (1) a proprietor who (2) negligently (3) conducts 'work' on his property (4) that causes damage to his neighbor."  *Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, 2019 WL 4111681, at *2 (E.D. La. Aug. 29, 2019).

In analyzing whether conduct is excessive or abusive, *i.e.*, more than an inconvenience, a court must determine the reasonableness of the conduct in light of the circumstances including

"the character of the neighborhood, the degree of the intrusion and the effect of the activity on the health and safety of the neighbors." *Rodrigue v. Copeland*, 475 So. 2d 1071, 1077 (La. 1985). "[W]hether an inconvenience is excessive or not is to be determined in the light of local ordinances and customs." *Barrett*, 671 So. 2d at 1191. But "local nuisance ordinances must be construed in reference to the applicable civil code provisions." *Par. of E. Feliciana*, 923 So. 2d at 51. Moreover, for noise to constitute a nuisance that is subject to an action for damages, the noise must be "excessive, unreasonable in degree, and of such character as to produce actual physical discomfort and annoyance to a person of ordinary sensibilities." *King v. W. Club, Inc.*, 587 So. 2d 122, 124 (La. App. 1991). "When the actions or work cease to be inconveniences and become damaging is a question of fact." *Badke*, 139 So. 3d at 1126.

Defendants hinge their argument that Plaintiffs' nuisance claim fails as a matter of law on the premise that Plaintiffs must, and cannot, prove that Defendants violated a local ordinance or custom.[158] This is not what Louisiana nuisance law requires. Nowhere does Louisiana law provide that compliance with a noise ordinance provides an escape hatch to a nuisance claim. However, while a city ordinance or permit cannot validate a nuisance or, conversely, invalidate a nuisance claim, *Meyer v. Kemper Ice Co.*, 158 So. 378, 381 (La. 1934), a court "must consider" the zoning and planning standards as one of several relevant factors in determining whether an alleged nuisance exists. *Jones v. Capitol Enters.*, 89 So. 3d 474, 508 (La. App. 2012) (stating that among the relevant factors are "[t]he place where the activity occurs," which includes "consider[ing] the neighborhood, zoning and planning standards, environmental goals"). Indeed, under Louisiana law, whether an inconvenience is so excessive as to rise to the level of a nuisance is evaluated in light of numerous factors that include not only local ordinances and customs, but also the character

---

[158] R. Doc. 106-1 at 15-20.

of the neighborhood, the degree of intrusion, the effect of the activity on the health and safety of the neighbors, and whether it causes actual physical discomfort and annoyance to a person of ordinary sensibilities. *See Barrett*, 671 So. 2d at 1191; *Rodrigue*, 475 So. 2d at 1077; *King*, 587 So. 2d at 124. In short, the Defendants' compliance (or not) with the city noise ordinance is one factor that will be considered by the factfinder in determining whether their helicopter is a nuisance. The same is true of the FAA aviation noise standard. Defendants have not shown that this standard applies in such a way as to negate a state-law nuisance claim arising from the operation of a private helicopter.[159] Thus, Defendants' compliance with the FAA standard, as with the city noise ordinance, is a factor to be evaluated in determining whether their helicopter operations constitute a nuisance. At this juncture, viewing the evidence in the light most favorable to Plaintiffs, they have identified sufficient disputed issues of material fact (*e.g.*, their own experiences with the noise) to defeat Defendants' motion for summary judgment on their nuisance claim for damages.

### b. Damages

Defendants argue that Plaintiffs cannot recover damages for personal injuries, including (1) hearing loss, (2) sleep disturbance, (3) mental health issues, (4) physical and mental suffering, (5) past, present, and future medical expenses, and (6) past, present, and future mental pain and suffering, because "Plaintiffs have failed to identify or disclose any retained or non-retained experts to offer expert general or specific causation testimony for their alleged medical injuries."[160] Defendants also contend that Plaintiffs cannot recover for diminution of property value and

---

[159] Defendants cite *Seattle Cmty. Council Fed'n*, 961 F.2d at 834-35, for the proposition that "courts have consistently upheld this FAA standard [*i.e.*, the DNL] to measure noise impacts from aviation operations." R. Doc. 125 at 7-8. While the DNL standard is one way to measure noise, Defendants have not cited, nor is the Court aware of, any case establishing that the DNL is the only way to measure aviation noise, particularly in the context of a state-law nuisance claim.

[160] R. Doc. 106-1 at 22-23 (quote at 23).

property damage because they "did not disclose a real estate expert and have no evidence to establish the diminution of value to [their] residences."[161]  Lastly, Defendants argue that Plaintiffs cannot recover damages for the cost to remediate their properties because they "have no expert who can opine on what sound remediation is needed for each of the three homes, the costs, and the success of such remediation."[162]  To that end, Defendants observe that Plaintiffs listed an architect (Hackenberg) and contractor (Rau) on their witness list, but failed to properly designate them as retained or non-retained experts, and "there has been no disclosure on how much if any [of] the cost [Plaintiffs incurred] was for sound remediation as opposed to other construction work, including adding on a bedroom, bathroom, and replacing the electrical and plumbing."[163]

Plaintiffs did not address these arguments in their summary-judgment response.[164] They thus concede that they cannot prevail on these items of damages.  *See  Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (stating that "failure to brief an argument in the district court waives that argument in that court"); *see also  Kellam v. Metrocare Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (quotation omitted)), *aff'd*, 560 F. App'x 360 (5th Cir. 2014).  Moreover, in ruling on Defendants' motion *in limine* this Court held that Plaintiffs failed to properly disclose retained or non-retained experts to address these issues.  Accordingly, Plaintiffs' claims for damages related to: (A) personal injuries, including (1) hearing loss, (2) sleep disturbance, (3) mental health issues, (4) physical and mental suffering, (5) past, present, and future medical expenses, and (6) past, present, and future mental pain and suffering; (B) diminution of

---

[161] *Id.* at 23-24 (quote at 24).
[162] *Id.* at 24.
[163] *Id.*
[164] *See* R. Doc. 123.

property value; (C) property damage; and (D) the cost to remediate their properties, are DISMISSED WITH PREJUDICE.[165]

### 4. Negligence

Defendants assert that Plaintiffs' negligence claim must be dismissed because it is not an independent general negligence claim, but rather a nuisance-negligence claim that is subsumed by Plaintiffs' claim under the vicinage articles.[166]  In response, Plaintiffs affirm that they "have not asserted a stand-alone negligence claim under article 2315, but rather a nuisance claim under Civil Code articles 667-669, which incorporates negligence as a component."[167]

Under Louisiana law, "[i]t is well established [that] any negligence action based on the vicinage articles is governed by the same duties and considerations as a direct action under those Code [a]rticles.  In other words, whether it is called a negligence action or an action under 667-669, the same legal standards apply."  *Yokum v. Pat O'Brien's Bar, Inc*, 2023 WL 11893172, at *5 (La. Dist. Ct. May 24, 2023).  And while "there is a distinction between a general negligence claim under article 2315 and the distinct negligence requirements for a nuisance claim under the vicinage articles," *id.* (citing *LeBouef v. Evonik Corp.*, 620 F. Supp. 3d 463, 474 (E.D. La. 2022)), because Plaintiffs admit that they allege only a nuisance-negligence action under the vicinage articles, any negligence claim purportedly stated in the complaint is DISMISSED WITH PREJUDICE.

---

[165] What remains to be tried is Plaintiffs' nuisance claim for damages related to loss of use of their property and inconvenience. *See* R. Doc. 1-1 at 10.

[166] R. Doc. 106-1 at 20-22.

[167] R. Doc. 123 at 20.  Defendants acknowledge Plaintiffs' admission in their reply but argue that the claim should also be dismissed because Plaintiffs cannot prevail on a nuisance claim.  R. Doc. 125 at 9.

III.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion *in limine* to exclude Bommer's opinions and testimony from trial (R. Doc. 105) is GRANTED as to excluding Bommer's testimony and opinions regarding property valuation, health effects and sleep disturbances caused by noise, residential sound modifications, and aviation-related topics, such as the feasibility of moving the helipad back to its old location, changing flight paths, or using the helipad only for specific purposes.  The motion is otherwise DENIED.

IT IS FURTHER ORDERED that Defendants' motion *in limine* to exclude any other retained or non-retained experts from offering opinions for Plaintiffs at trial (R. Doc. 105) is GRANTED.  However, these witnesses (*i.e.*, Melisa Rey's healthcare providers and therapists, Hackenberg, and Rau) may testify as fact witnesses, if appropriate.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (R. Doc. 106) is GRANTED as to dismissing Plaintiffs' claim for injunctive relief, which is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment (R. Doc. 106) is DENIED as to dismissing Plaintiffs' nuisance claim for damages, generally.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment (R. Doc. 106) is GRANTED as to dismissing Plaintiffs' stand-alone negligence claim, and that claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (R. Doc. 106) is GRANTED as to dismissing Plaintiffs' claims for damages related to: (A) personal injuries, including (1) hearing loss, (2) sleep disturbance, (3) mental health issues, (4) physical and mental

suffering, (5) past, present, and future medical expenses, and (6) past, present, and future mental pain and suffering; (B) diminution of property value; (C) property damage; and (D) the cost to remediate their properties, and those claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 3rd day of November, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE